# UNITED STATES *v.* HALPER

No. 87–1383.   Argued January 17, 1989—Decided May 15, 1989

436

BLACKMUN, J., delivered the opinion for a unanimous Court. KENNEDY, J., filed a concurring opinion, *post*, p. 452.

*Michael R. Dreeben* argued the cause for the United States. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Bolton, Deputy Solicitor General Merrill, Roy T. Englert, Jr.,* and *Michael Jay Singer.*

*John G. Roberts, Jr.,* by invitation of the Court, 488 U. S. 906, argued the cause and filed a brief as *amicus curiae* in support of the judgment below.

JUSTICE BLACKMUN delivered the opinion of the Court.

In this case, we consider whether and under what circumstances a civil penalty may constitute "punishment" for the purposes of double jeopardy analysis.[1]

---

[1] The Double Jeopardy Clause reads:

"[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U. S. Const., Amdt. 5.

■■■■■■■■■■

# I

Respondent Irwin Halper worked as manager of New City Medical Laboratories, Inc., a company which provided medical service in New York City for patients eligible for benefits under the federal Medicare program. In that capacity, Halper submitted to Blue Cross and Blue Shield of Greater New York, a fiscal intermediary for Medicare, 65 separate false claims for reimbursement for service rendered. Specifically, on 65 occasions during 1982 and 1983, Halper mischaracterized the medical service performed by New City, demanding reimbursement at the rate of $12 per claim when the actual service rendered entitled New City to only $3 per claim. Duped by these misrepresentations, Blue Cross overpaid New City a total of $585; Blue Cross passed these overcharges along to the Federal Government.[2]

The Government became aware of Halper's actions and in April 1985 it indicted him on 65 counts of violating the criminal false-claims statute, 18 U. S. C. §287, which prohibits "mak[ing] or present[ing] . . . any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent." Halper was convicted on all 65 counts, as well as on 16 counts of mail fraud. He was sentenced in July 1985 to imprisonment for two years and fined $5,000.

---

[2] The underlying details of Halper's fraud are of little importance with respect to his double jeopardy claim. In brief, providers such as New City bill for their service according to designated code numbers corresponding to the medical service provided. Code "9018" was the number for seeking reimbursement for service performed for the first or only patient seen at a private home or Skilled Nursing Facility the provider was required to visit. Code "9019" was the number for seeking reimbursement for service performed for each additional patient seen at the facility. At all relevant times, the allowable reimbursement for service under code "9018" was either $10 or $12. The allowable reimbursement under code "9019" was $3. Halper submitted 65 claims falsely seeking reimbursement under code "9018" for service properly reimbursable under the lower priced code "9019." See 660 F. Supp. 531, 532 (SDNY 1987).

The Government then brought the present action in the United States District Court for the Southern District of New York against Halper and another, who later was dismissed from the case, see App. 21, 36, under the civil False Claims Act, 31 U. S. C. §§ 3729–3731. That Act was violated when "[a] person not a member of an armed force of the United States . . . (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved." § 3729. Based on facts established by Halper's criminal conviction and incorporated in the civil suit, the District Court granted summary judgment for the Government on the issue of liability. 660 F. Supp. 531, 532–533 (1987).

The court then turned its attention to the remedy for Halper's multiple violations. The remedial provision of the Act stated that a person in violation is "liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action." 31 U. S. C. § 3729 (1982 ed., Supp. II).[3] Having violated the Act 65 separate times, Halper thus appeared to be subject to a statutory penalty of more than $130,000.

The District Court, however, concluded that in light of Halper's previous criminal punishment, an additional penalty this large would violate the Double Jeopardy Clause. Although the court recognized that the statutory provisions for a civil sanction of $2,000 plus double damages for a claims violation was not in itself criminal punishment, it concluded that this civil remedy, designed to make the Government whole, would constitute a second punishment for double jeop-

---

[3] The Act was amended by the False Claims Amendments Act of 1986, Pub. L. 99–562, 100 Stat. 3153, to increase the civil penalty to "not less than $5,000 and not more than $10,000 plus 3 times the amount of damages which the Government sustains because of the act of that person," and "the costs of a civil action brought to recover any such penalty or damages." 31 U. S. C. § 3729(a)(7) (1982 ed., Supp. V).

ardy analysis if, in application, the amount of the penalty was "entirely unrelated" to the actual damages suffered and the expenses incurred by the Government. 660 F. Supp., at 533. In the District Court's view, the authorized recovery of more than $130,000 bore no "rational relation" to the sum of the Government's $585 actual loss plus its costs in investigating and prosecuting Halper's false claims. *Ibid.* The court therefore ruled that imposition of the full amount would violate the Double Jeopardy Clause by punishing Halper a second time for the same conduct. To avoid this constitutional proscription, the District Court read the $2,000-per-count statutory penalty as discretionary and, approximating the amount required to make the Government whole, imposed the full sanction for only 8 of the 65 counts. The court entered summary judgment for the Government in the amount of $16,000. *Id.,* at 534.

The United States, pursuant to Federal Rule of Civil Procedure 59(e), moved for reconsideration. The motion was granted. On reconsideration, the court confessed error in ruling that the $2,000 penalty was not mandatory for each count. 664 F. Supp. 852, 853–854 (1987). It remained firm, however, in its conclusion that the $130,000 penalty could not be imposed because, in the circumstances before it, that amount would violate the Double Jeopardy Clause's prohibition of multiple punishments. *Ibid.* Looking to *United States ex rel. Marcus* v. *Hess,* 317 U. S. 537 (1943), for guidance, the court concluded that, although a penalty that is more than the precise amount of actual damages is not necessarily punishment, a penalty becomes punishment when, quoting Justice Frankfurter's concurrence in *Hess, id.,* at 554, it exceeds what "'could reasonably be regarded as the equivalent of compensation for the Government's loss.'" 664 F. Supp., at 854. Applying this principle, the District Court concluded that the statutorily authorized penalty of $130,000, an amount more than 220 times greater than the Government's measurable loss, qualified as punishment which, in

view of Halper's previous criminal conviction and sentence, was barred by the Double Jeopardy Clause. Because it considered the Act unconstitutional as applied to Halper, the District Court amended its judgment to limit the Government's recovery to double damages of $1,170 and the costs of the civil action. *Id.*, at 855.

The United States, pursuant to 28 U. S. C. § 1252, took a direct appeal to this Court. We noted probable jurisdiction, 486 U. S. 1053 (1988), in order to determine the constitutionality of the remedial provisions of the civil False Claims Act as applied in Halper's case.

## II

This Court many times has held that the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. See, *e. g.*, *North Carolina* v. *Pearce*, 395 U. S. 711, 717 (1969). The third of these protections—the one at issue here—has deep roots in our history and jurisprudence. As early as 1641, the Colony of Massachusetts in its "Body of Liberties" stated: "No man shall be twise sentenced by Civill Justice for one and the same Crime, offence, or Trespasse." American Historical Documents 1000–1904, 43 Harvard Classics 66, 72 (C. Eliot ed. 1910). In drafting his initial version of what came to be our Double Jeopardy Clause, James Madison focused explicitly on the issue of multiple punishment: "No person shall be subject, except in cases of impeachment, to more than one punishment or one trial for the same offence." 1 Annals of Cong. 434 (1789–1791) (J. Gales ed. 1834). In our case law, too, this Court, over a century ago, observed: "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence." *Ex parte Lange*, 18 Wall. 163, 168 (1874).

The multiple-punishment issue before us is narrowly framed by the common understandings of the parties to this case. They do not dispute that respondent Halper already has been punished as a result of his prior criminal proceeding when he was sentenced to a jail term and fined $5,000. Nor do they dispute that the instant proceeding and the prior criminal proceeding concern the same conduct, the submission of 65 false claims.[4] The sole question here is whether the statutory penalty authorized by the civil False Claims Act, under which Halper is subject to liability of $130,000 for false claims amounting to $585, constitutes a second "punishment" for the purpose of double jeopardy analysis.

The Government argues that in three previous cases, *Helvering* v. *Mitchell*, 303 U. S. 391 (1938), *United States ex rel. Marcus* v. *Hess*, *supra*, and *Rex Trailer Co.* v. *United States*, 350 U. S. 148 (1956), this Court foreclosed any argument that a penalty assessed in a civil proceeding, and specifically in a civil False Claims Act proceeding, may give rise to double jeopardy. Specifically, the Government asserts that these cases establish three principles: first, that the Double Jeopardy Clause's prohibition against multiple punishment protects against only a second criminal penalty; second, that criminal penalties are imposed only in criminal proceedings; and, third, that proceedings under, and penalties authorized by, the civil False Claims Act are civil in nature. In addition, the Government argues on the basis of these three cases and others, see, *e. g.*, *United States* v. *Ward*, 448 U. S. 242 (1980), that whether a proceeding or penalty is civil or criminal is a matter of statutory construction, and that Congress clearly intended the proceedings and penalty at issue here to be civil in nature.

The Government, in our view, has misconstrued somewhat the nature of the multiple-punishment inquiry, and, in so doing, has overread the holdings of our precedents. Al-

---

[4] Indeed, as has been noted, the District Court found Halper liable strictly on the basis of the facts established in the criminal proceeding.

though, taken together, these cases establish that proceedings and penalties under the civil False Claims Act are indeed civil in nature, and that a civil remedy does not rise to the level of "punishment" merely because Congress provided for civil recovery in excess of the Government's actual damages, they do not foreclose the possibility that in a particular case a civil penalty authorized by the Act may be so extreme and so divorced from the Government's damages and expenses as to constitute punishment.

In *Mitchell*, the Commissioner of Internal Revenue determined that the taxpayer fraudulently had asserted large sums as deductions on his 1929 income tax return. Mitchell was indicted and prosecuted for willful evasion of taxes. At trial, however, he was acquitted. The Government then brought an action to collect a deficiency of $728,709.84 in Mitchell's tax and, as well, a 50% additional amount specified by statute on account of the fraud. Mitchell argued that this second action subjected him to double jeopardy because the 50% addition was intended as punishment, and that the supposedly civil assessment proceeding therefore was actually a second criminal proceeding based on a single course of conduct.

This Court did not agree. The Double Jeopardy Clause, it noted, "prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." 303 U. S., at 399. Because Mitchell was acquitted (and therefore not punished) in his criminal prosecution, the Court was called upon to determine only whether the statute imposed a criminal sanction—in which case the deficiency proceeding would be an unconstitutional second attempt to punish criminally. Whether the statutory sanction was criminal in nature, the Court held, was a question of statutory interpretation; and, applying traditional canons of construction, the Court had little difficulty concluding that Congress intended that the statute impose a civil penalty and that the deficiency sanction was in fact remedial, providing reimbursement to

the Government for investigatory and other costs of the taxpayer's fraud. *Id.*, at 398–405. Since "in the civil enforcement of a remedial sanction there can be no double jeopardy," *id.*, at 404, the Court rejected Mitchell's claim.

*Mitchell* at most is of tangential significance for our current inquiry. While the opinion makes clear that the Government may impose both a criminal and a civil sanction with respect to the same act or omission, and that whether a given sanction is criminal is a matter of statutory construction, it simply does not address the question we face today: whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes "punishment" for the purpose of double jeopardy analysis. If anything, Justice Brandeis' carefully crafted opinion for the Court intimates that a civil sanction may constitute punishment under some circumstances. As noted above, the Court distinguished between the Double Jeopardy Clause's prohibition against "attempting a second time to punish criminally" and its prohibition against "merely punishing twice." *Id.*, at 399. The omission of the qualifying adverb "criminally" from the formulation of the prohibition against double punishment suggests, albeit indirectly, that "punishment" indeed may arise from either criminal or civil proceedings. See also *United States v. La Franca*, 282 U. S. 568, 573 (1931) (asking, but not answering, the question whether a penalty assessed in a civil proceeding may nonetheless constitute punishment for the purposes of double jeopardy analysis).

*United States ex rel. Marcus* v. *Hess* is closer to the point, but it, too, does not preclude the District Court's judgment. In *Hess*, electrical contractors were indicted for defrauding the Government by bidding collusively on public-works projects. They pleaded *nolo contendere* and were fined $54,000. 317 U. S., at 545. Subsequently, a group of private plaintiffs brought a *qui tam* action in the name of the United States against the defendants pursuant to a statute providing that a person guilty of defrauding the Government

was subject to a civil penalty of $2,000 for each violation, double the amount of actual damages, and the costs of the suit.[5] The plaintiffs obtained a judgment for $315,000, of which $112,000 reflected the $2,000 per-count figure for the 56 counts and $203,000 was for double damages. *Id.,* at 540.

The defendants challenged the judgment on double jeopardy grounds, arguing, as did the defendant in *Mitchell,* that the proceeding was barred as a second attempt to punish the defendants criminally. This Court dispensed with this claim of criminal punishment, precisely as it had in *Mitchell,* by reference to the statute. The Court held that the chief purpose of the statute "was to provide for restitution to the government of money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole." 317 U. S., at 551–552. Since proceedings under the statute were remedial and designed to "protect the government from financial loss"—rather than to "vindicate public justice"—they were civil in nature. *Id.,* at 548–549.

Because the defendants in *Hess* had been punished in a prior criminal proceeding (as Mitchell had not), the Court faced a further double jeopardy problem: whether (as in the instant case) the second sanction was barred because it constituted a second punishment. Under the *qui tam* provision of the statute, the Government's share of the recovery was $150,000, *id.,* at 545, for actual damages of $101,500. Although the recovery was greater than the precise amount of the actual damages, the Court recognized, at least with respect to "the remedy now before [it]," that the lump sum and double damages provided by statute did not "do more than

---

[5] Under the *qui tam* provisions of the Act, 31 U. S. C. § 3730(b), a private party may bring suit in the name of the United States. If the suit is successful, the plaintiff may receive what the District Court deems to be a reasonable portion of the civil penalty and damages, though this share may not exceed 25% of the proceeds of the action and an amount for reasonable expenses necessarily incurred and costs. § 3730(c)(2).

afford the government complete indemnity for the injuries done it." *Id.*, at 549. Those injuries, of course, included not merely the amount of the fraud itself, but also ancillary costs, such as the costs of detection and investigation, that routinely attend the Government's efforts to root out deceptive practices directed at the public purse. *Id.*, at 551–552. Since the actual costs to the Government roughly equaled the damages recovered, in rejecting the defendants' double jeopardy claim, the Court simply did not face the stark situation presently before us where the recovery is exponentially greater than the amount of the fraud, and, at least in the District Court's informed view, is also many times the amount of the Government's total loss.

Nor did the Court face such a situation in *Rex Trailer*. In that case, the defendants fraudulently purchased five trucks under the Surplus Property Act of 1944, by claiming veteran priority rights to which they were not entitled. They pleaded *nolo contendere* to criminal charges and paid fines aggregating $25,000. The Government then brought a civil action under the Surplus Property Act of 1944, 58 Stat. 765, 780, which provided three alternative civil remedies: (1) $2,000 for each act plus double damages and costs; (2) recovery "as liquidated damages" of twice the consideration agreed to be given; and (3) recovery of the property plus, "as liquidated damages," retention of the consideration given. See 350 U. S., at 149, n. 1. The Government sought the first of these remedies which the Court considered "comparable to the recovery under liquidated-damage provisions which fix compensation for anticipated loss." *Id.*, at 153. The Court rejected the defendants' claim that the $2,000-per-count penalty constituted a second punishment. Although the Court recognized that the Government's actual loss due to the defendants' fraud was difficult if not impossible to ascertain, it recognized that the Government did sustain injury due to the resultant decrease of motor vehicles available to Government agencies, an increase in undesirable speculation, and damage

to its program of promoting bona fide sales to veterans.[6] Since the function of a liquidated damages provision was to provide a measure of recovery where damages are difficult to quantify, the Court found "on the record before it—where the defendants were liable for only $10,000—that they had not been subjected to a "measure of recovery . . . so unreasonable or excessive" as to constitute a second criminal punishment in violation of double jeopardy. *Id.*, at 154. See also *One Lot Emerald Cut Stones* v. *United States*, 409 U. S. 232, 237 (1972) (customs forfeiture "provides a reasonable form of liquidated damages for violation of the inspection provisions and serves to reimburse the Government for investigation and enforcement expenses").

The relevant teaching of these cases is that the Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis. These cases do not tell us, because the problem was not presented in them, what the Constitution commands when one of those imprecise formulas authorizes a supposedly remedial sanction that does not remotely approximate the Government's damages and actual costs, and rough justice becomes clear injustice. That such a circumstance might arise appears to be anticipated not only in *Mitchell*, as noted above, but also in the explicitly case-specific holdings of *Hess* and *Rex Trailer*.

### III

We turn, finally, to the unresolved question implicit in our cases: whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause. As noted above, the Government takes

---

[6] The Court could have included the Government's investigative and prosecutorial costs. These also must be factored into a determination as to whether the sanction was disproportionate to the Government's loss.

the position that punishment in the relevant sense is meted out only in criminal proceedings, and that whether proceedings are criminal or civil is a matter of statutory construction. The Government correctly observes that this Court has followed this abstract approach when determining whether the procedural protections of the Sixth Amendment apply to proceedings under a given statute, in affixing the appropriate standard of proof for such proceedings, and in determining whether double jeopardy protections should be applied. See *United States* v. *Ward,* 448 U. S., at 248–251. But while recourse to statutory language, structure, and intent is appropriate in identifying the inherent nature of a proceeding, or in determining the constitutional safeguards that must accompany those proceedings as a general matter, the approach is not well suited to the context of the "humane interests" safeguarded by the Double Jeopardy Clause's proscription of multiple punishments. See *Hess,* 317 U. S., at 554 (concurring opinion of Frankfurter, J.). This constitutional protection is intrinsically personal. Its violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state.[7]

In making this assessment, the labels "criminal" and "civil" are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. *Ibid.*[8] The

---

[7] This is not to say that whether a sanction constitutes punishment must be determined from the defendant's perspective. On the contrary, our cases have acknowledged that for the defendant even remedial sanctions carry the sting of punishment. See, *e. g., United States ex rel. Marcus* v. *Hess,* 317 U. S. 537, 551 (1943). Rather, we hold merely that in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated.

[8] As the name indicates, punitive damages, available in civil cases, serve punitive goals. *Day* v. *Woodworth,* 13 How. 363, 371 (1852). By the

notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads. Cf. *Hicks* v. *Feiock*, 485 U. S. 624, 631 (1988) ("[T]he labels affixed either to the proceeding or to the relief imposed . . . are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law"). To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. See, *e. g.*, *Kennedy* v. *Mendoza-Martinez*, 372 U. S. 144, 168 (1963) (these are the "traditional aims of punishment"). Furthermore, "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives." *Bell* v. *Wolfish*, 441 U. S. 520, 539, n. 20 (1979). From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. Cf. *Mendoza-Martinez*, 372 U. S., at 169 (whether sanction appears excessive in relation to its nonpunitive purpose is relevant to determination whether sanction is civil or criminal). We therefore hold that under the Double Jeopardy Clause a defendant who already has been

---

same token, strict liability crimes are principally directed at social betterment rather than punishment of culpable individuals. See *United States* v. *Balint*, 258 U. S. 250, 252 (1922).

punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

We acknowledge that this inquiry will not be an exact pursuit. In our decided cases we have noted that the precise amount of the Government's damages and costs may prove to be difficult, if not impossible, to ascertain. See, *e. g.*, *Rex Trailer*, 350 U. S., at 153. Similarly, it would be difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment. In other words, as we have observed above, the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice. Our upholding reasonable liquidated damages clauses reflects this unavoidable imprecision. Similarly, we have recognized that in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole.

We cast no shadow on these time-honored judgments. What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punish-

ment.[9] We must leave to the trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the Government may receive without crossing the line between remedy and punishment. Cf. *Morris* v. *Mathews*, 475 U. S. 237 (1986) (reducing criminal conviction to lesser included offense in order to avoid double jeopardy bar); see also *Peterson* v. *Richardson*, 370 F. Supp. 1259, 1267 (ND Tex 1973), aff'd *sub nom. Peterson* v. *Weinberger*, 508 F. 2d 45 (CA5), cert. denied *sub nom. Peterson* v. *Mathews*, 423 U. S. 830 (1975) (imposing less than full civil sanction authorized by False Claims Act when the full sanction would be unreasonable and not remotely related to actual loss). While the trial court's judgment in these matters often may amount to no more than an approximation, even an approximation will go far towards ensuring both that the Government is fully compensated for the costs of corruption and that, as required by the Double Jeopardy Clause, the defendant is protected from a sanction so disproportionate to the damages caused that it constitutes a second punishment.

We do not consider our ruling far reaching or disruptive of the Government's need to combat fraud. Nothing in today's ruling precludes the Government from seeking the full civil penalty against a defendant who previously has not been punished for the same conduct, even if the civil sanction imposed is punitive. In such a case, the Double Jeopardy Clause simply is not implicated. Nor does the decision prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding. In a single proceeding the multiple-punishment issue would be limited to ensuring that the total punishment did not exceed that authorized by the legislature. See, *e. g., Missouri* v. *Hunter*, 459 U. S. 359, 368–369 (1983) ("Where . . . a legislature specifically author-

---

[9] Had Halper been found liable under the False Claims Amendment Act of 1986, see n. 3, *supra*, the civil penalty against him would have amounted to more than $326,755.

izes cumulative punishment under two statutes . . . the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial").[10] Finally, nothing in today's opinion precludes a private party from filing a civil suit seeking damages for conduct that previously was the subject of criminal prosecution and punishment. The protections of the Double Jeopardy Clause are not triggered by litigation between private parties.[11] In other words, the only proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole.[12]

---

[10] That the Government seeks the civil penalty in a second proceeding is critical in triggering the protections of the Double Jeopardy Clause. Since a legislature may authorize cumulative punishment under two statutes for a single course of conduct, the multiple-punishment inquiry in the context of a single proceeding focuses on whether the legislature actually authorized the cumulative punishment. See *Ohio* v. *Johnson*, 467 U. S. 493, 499–500 (1984). On the other hand, when the Government already has imposed a criminal penalty and seeks to impose additional punishment in a second proceeding, the Double Jeopardy Clause protects against the possibility that the Government is seeking the second punishment because it is dissatisfied with the sanction obtained in the first proceeding.

[11] We express no opinion as to whether a *qui tam* action, such as the one in *Hess*, is properly characterized as a suit between private parties for the purposes of this rule. In contrast to the plaintiff in a private-attorney-general action, the private party in a *qui tam* action brings suit in the name of the United States and shares with the Government any proceeds of the action. 31 U. S. C. § 3730. In *Hess*, the Court assumed but did not decide that a *qui tam* action could give rise to double jeopardy. Since this assumption was not essential to the judgment in *Hess*, we consider the issue unresolved.

[12] It hardly seems necessary to state that a suit under the Act alleging one or two false claims would satisfy the rational-relationship requirement. It is only when a sizable number of false claims is present that, as a practical matter, the issue of double jeopardy may arise.

## IV

Returning to the case at hand, the District Court found a "tremendous disparity" between the Government's actual damages and the civil penalty authorized by the Act. 664 F. Supp., at 855. The court approximated the Government's expenses at no more than $16,000, as compared to the asserted liability of Halper in excess of $130,000. 660 F. Supp., at 534. Although the Government apparently did not challenge the District Court's figure—choosing instead to litigate the legal issue we now decide—we think it unfair to deprive the Government of an opportunity to present to the District Court an accounting of its actual costs arising from Halper's fraud, to seek an adjustment of the District Court's approximation, and to recover its demonstrated costs. While we agree with the District Court that the disparity between its approximation of the Government's costs and Halper's $130,000 liability is sufficiently disproportionate that the sanction constitutes a second punishment in violation of double jeopardy, we remand the case to permit the Government to demonstrate that the District Court's assessment of its injuries was erroneous.

The judgment of the District Court is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY, concurring.

I join the opinion of the Court and write only to discuss the limits of today's holding. As the Court points out, our holding will not undermine the Government's efforts to enforce the laws effectively, since appropriate alternatives remain to ensure the Government's ability to make full use of the sanctions authorized by statute. *Ante,* at 450–451. Our rule permits the imposition in the ordinary case of at least a fixed penalty roughly proportionate to the damage caused or a rea-

sonably liquidated amount, plus double damages. *Ante*, at 449.

Today's holding, I would stress, constitutes an objective rule that is grounded in the nature of the sanction and the facts of the particular case. It does not authorize courts to undertake a broad inquiry into the subjective purposes that may be thought to lie behind a given judicial proceeding. Cf. *Hicks* v. *Feiock*, 485 U. S. 624, 635 (1988); *Kennedy* v. *Mendoza-Martinez*, 372 U. S. 144, 168–169 (1963). Such an inquiry would be amorphous and speculative, and would mire the courts in the quagmire of differentiating among the multiple purposes that underlie every proceeding, whether it be civil or criminal in name. It also would breed confusion among legislators who seek to structure the mechanisms of proper law enforcement within constitutional commands. In approaching the sometimes difficult question whether an enactment constitutes what must be deemed a punishment, we have recognized that a number of objective factors bear on the inquiry. *Ibid.* In the case before us, I agree with the Court that the controlling circumstance is whether the civil penalty imposed in the second proceeding bears any rational relation to the damages suffered by the Government. Here it does not, so it must be considered punishment for purposes of the Double Jeopardy Clause.