U.S. v. Emerson                          CV-94-152-JD  04/21/95
                    UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE

United States of America

        v.                              Civil No. 94-152-JD

Alan D. Emerson, Individually
and d/b/a Emerson Aviation


                               O R D E R


        The plaintiff, the United States of America, has brought

this action against the defendants Alan Emerson, individually,

and Alan Emerson d/b/a Emerson Aviation ("Emerson Aviation") to

recover civil penalties for past violations of federal aviation

law and to permanently enjoin future violations.  In its order of

March 29, 1995, the court denied the defendants' motion to

dismiss (document no. 11) for lack of subject matter jurisdic-

tion.  Before the court is the defendants' motion to reconsider

(document no. 39) in which they correctly point out that in the

March 29, 1995, order the court did not address the question of

its subject matter jurisdiction with respect to the plaintiff's

amended complaint.  The court grants the motion to reconsider to

address that question.[1]

_____

        [1]The court notes that in their motion to reconsider, the
defendants for the first time request the court to dismiss
certain of the plaintiff's claims on grounds other than a lack of
subject matter jurisdiction.  See Defendants' Motion to
                                                   (continued...)

<u>Background</u>

On May 12, 1992, the Federal Aviation Administration ("FAA") issued an emergency order of revocation revoking the airman certificate of Alan Emerson d/b/a Emerson Aviation for violations of air safety regulations.  The FAA found that "an emergency existed and that safety in air commerce or air transportation required that the order take effect immediately."  Amended Complaint, ¶ 6.

The plaintiff alleges that from November 11, 1992, through June 18, 1993, defendants Alan Emerson and Emerson Aviation operated, or caused or authorized others to use civil aircraft registration number N3570M (a Piper PA-34-200T Seneca) or civil aircraft registration number N30DF (a Piper PA-31) on sixteen flights for compensation or hire between Laconia, New Hampshire, and Albany, New York.  Amended Complaint, ¶ 10.  The plaintiff further alleges that from March 11, 1993, through July 28, 1993, the defendants operated, or caused or authorized others to use

_____

[1](...continued)
Reconsider, ¶ 7.  The court treats this request as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) must be filed "before pleading if a further pleading is permitted."  Fed. R. Civ. P. 12(b).  Accordingly, because the defendants have previously filed an answer to the amended complaint (document no. 35), their 12(b)(6) motion is untimely.  The court denies the defendants' request for dismissal of claims under Rule 12(b)(6) without prejudice to their rights to raise the same issues in a motion for summary judgment.  <u>See</u> <u>generally</u> Fed. R. Civ. P. 56.

2

civil aircraft registration numbers N3570M or N30DF on eighteen flights carrying passengers or property of Wickers Sportswear for compensation or hire.  Id., ¶ 11.  Additionally, the plaintiff alleges that from June 8, 1992, through February 8, 1994, the defendants operated, or caused or authorized others to use civil aircraft registration numbers N2207X, N3570M or N30DF on nineteen flights carrying passengers or property of Franklin Brush Company for compensation or hire.  Id., ¶ 12.  The plaintiff alleges that the defendants conducted each of these flights without holding either the operating certificate required for air taxi commercial operators or the appropriate operations specifications, in violation of 14 C.F.R. § 135.5.[2]  Id., ¶ 14.

The plaintiff alleges that defendants Alan Emerson and Emerson Aviation operated or caused or authorized others to operate the above-mentioned flights when Alan Emerson and such

_____

[2]Title 14 C.F.R. § 135.5 provides,

**§ 135.5 Certificate and operations specifications required.**

No person may operate an aircraft under this part without, or in violation of, an air taxi/commercial operator (ATCO) operating certificate and appropriate operations specifications issued under this part, or, for operations with large aircraft having a maximum passenger seating configuration, excluding any pilot seat, of more than 30 seats, or a maximum payload capacity of more than 7,500 pounds, without, or in violation of, appropriate operations specifications issued under part 121 of this chapter.

3

pilots were not qualified to do so under 14 C.F.R. Part 135.

Amended Complaint, ¶ 15. The plaintiff further alleges that Alan

Emerson and Emerson Aviation violated 14 C.F.R. §§ 135.293(a)[3]

---

[3]Title 14 C.F.R. § 135.293(a) provides,

**§ 135.293  Initial and recurrent pilot testing requirements.**

(a) No certificate holder may use a pilot, nor may any person serve as a pilot, unless, since the beginning of the 12th calendar month before that service, that pilot has passed a written or oral test, given by the Administrator or an authorized check pilot, on that pilot's knowledge in the following areas---
    (1) The appropriate provisions of parts 61, 91, and 135 of this chapter and the operations specifications and the manual of the certificate holder;
    (2) For each type of aircraft to be flown by the pilot, the aircraft powerplant, major components and systems, major appliances, performance and operating limitations, standard and emergency operating procedures, and the contents of the approved Aircraft Flight Manual or equivalent, as applicable;
    (3) For each type of aircraft to be flown by the pilot, the method of determining compliance with weight and balance limitations for takeoff, landing and en route operations;
    (4) Navigation and use of air navigation aids appropriate to the operation or pilot authorization, including, when applicable, instrument approach facilities and procedures;
    (5) Air traffic control procedures, including IFR procedures when applicable;
    (6) Meteorology in general, including the principles of frontal systems, icing, fog, thunderstorms, and windshear, and, if appropriate for the operation of the certificate holder, high altitude weather;
    (7) Procedures for—

(continued...)

4

and 135.295[4] by using pilots on the above-mentioned flights who

_____

³(...continued)
    (i) Recognizing and avoiding severe weather situations;
    (ii) Escaping from severe weather situations, in case of inadvertent encounters, including low-altitude windshear (except that rotorcraft pilots are not required to be tested on escaping from low-altitude windshear); and
    (iii) Operating in or near thunderstorms (including best penetrating altitudes), turbulent air (including clear air turbulence), icing, hail, and other potentially hazardous meteorological conditions; and
    (8) New equipment, procedures, or techniques, as appropriate.

14 C.F.R. § 135.293(a) (1994).

⁴Title 14 C.F.R. § 135.295 provides,

**§ 135.295  Initial and recurrent flight attendant crewmember testing requirements.**

    No certificate holder may use a flight attendant crewmember, nor may any person serve as a flight attendant crewmember unless, since the beginning of the 12th calendar month before that service, the certificate holder has determined by appropriate initial and recurrent testing that the person is knowledgeable and competent in the following areas as appropriate to assigned duties and responsibilities---
    (a) Authority of the pilot in command;
    (b) Passenger handling, including procedures to be followed in handling deranged persons or other persons whose conduct might jeopardize safety;
    (c) Crewmember assignments, functions, and responsibilities during ditching and evacuation of persons who may need the assistance of another person to move expeditiously to an exit in an emergency;
    (d) Briefing of passengers;
    (e) Location and operation of portable fire extinguishers and other items of emergency equipment;
                                        (continued...)

5

were not qualified thereunder.  Id., ¶ 16.  The plaintiff further alleges that in connection with the above-mentioned flights Alan Emerson and Emerson Aviation violated 14 C.F.R. § 135.31[5] by advertising or otherwise offering to perform charter flight operations for which they failed to possess either the proper certification or the required operations specifications.  Amended Complaint, ¶ 17.

The plaintiff contends that pursuant to the Federal Aviation Act at 49 U.S.C.A. § 1471 each defendant is subject to a civil penalty not to exceed $10,000 for each violation.  Amended

_____

[4](...continued)
  (f) Proper use of cabin equipment and controls;
  (g) Location and operation of passenger oxygen equipment;
  (h) Location and operation of all normal and emergency exits, including evacuation chutes and escape routes; and
  (i) Seating of persons who may need assistance of another person to move rapidly to an exit in an emergency as prescribed by the certificate holder's operations manual.

14 C.F.R. § 135.295 (1994).

[5]Title 14 C.F.R. § 135.31 provides,

**§ 135.31  Advertising.**

  No certificate holder may advertise or otherwise offer to perform operations subject to this part that are not authorized by the certificate holder's operating certificate and operations specifications.

14 C.F.R. § 135.31 (1994).

6

Complaint, ¶ 18.  Accordingly, the plaintiff alleges that defendants Alan Emerson and Emerson Aviation are each subject to a civil penalty not to exceed $530,000 based on a total of fifty-three violations.  Id.

On February 14, 1995, the court issued a preliminary injunction requiring, inter alia, that each of the defendants refrain from performing any aviation related acts unless and until they validly possess the proper FAA authority to do so.

## Discussion

Defendants Alan Emerson and Emerson Aviation assert, inter alia, that the court lacks subject matter jurisdiction to adjudicate the plaintiff's claims because the plaintiff has not exhausted its administrative remedies before the National Transportation Safety Board ("NTSB"), that the plaintiff's claims are untimely under the NTSB's "stale complaint" rule, that the FAA lacks authority to maintain its claims, and that the exercise of the court's jurisdiction would violate the double jeopardy clause of the United States Constitution.  See Defendants' Motion to Dismiss, ¶¶ 3-7.  In response, the government argues that the court's exercise of subject matter jurisdiction is consistent with the governing statutes and would not impinge on the defendants' constitutional rights.

7

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) challenges the statutory or constitutional power of the court to adjudicate a particular case.  2A Moore's Federal Practice ¶ 12.07 (2d ed. 1994).  In ruling upon a motion to dismiss for lack of subject matter jurisdiction, "the allegations of the complaint should be construed favorably to the pleader."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

I.  Statutory Authority for Federal District Court Jurisdiction

The plaintiff asserts that the court has exclusive jurisdiction over its action pursuant to the appropriate federal statutes.  Government's Objection to Defendants' Motion to Dismiss at 2-6.  Under 49 U.S.C.A. § 1430,

> (a) It shall be unlawful---
>
> * * *
>
>> (2) For any person to serve in any capacity as an airman in connection with any civil aircraft, aircraft engine, propeller or appliance used or intended for use, in air commerce without an airman certificate authorizing him to serve in such capacity, or in violation of any term, condition, or limitation thereof, or in violation of any order, rule, or regulation issued under this subchapter.
>
>> (4) For any person to operate as an air

8

carrier without an air carrier operating certificate, or in violation of the terms of any such certificate;

(5) For any person to operate aircraft in air commerce in violation of any other rule, regulation, or certificate of the Administrator under this subchapter.

49 U.S.C.A. § 1430(a)(2)(4)(5) (West 1976). Section 1430 is contained in subchapter VI of the Federal Aviation Act, which addresses the safety regulation of civil aeronautics. See 49 U.S.C.A. §§ 1421-1432 (subchapter VI). The regulations at issue, 14 C.F.R. §§ 135.5, 135.31, 135.293 and 135.295, were promulgated pursuant to subchapter VI. See Air Taxi Operators and Commercial Operators Rules, 14 C.F.R. Part 135 at 578 (1994) (indicating that Part 135 was promulgated pursuant to 49 U.S.C. §§ 1421-1431, in addition to 49 U.S.C. §§ 1354(a) (stating certain broad powers and duties of the Administrator), 1355(a) (authorizing the Administrator to delegate powers and duties related to the issuance of certificates under subchapter VI), 1502 (dealing with international agreements) and 49 U.S.C. § 106(g) (revised Pub. L. No. 97-449, January 12, 1983) (authorizing the FAA administrator to carry out certain duties of the Secretary of Transportation).

In pertinent part, 49 App. U.S.C.A. § 1471 provides,

(a)(1) Any person who violates (A) any provision of subchapter III, IV, V, VI, VII, or XII of this chapter or of section 1501 or 1514, or 1515(e)(2)(B) of this title or any rule, regulation, or order issued thereunder, or under section 1482(i) of this title, or any term, condition, or limitation of any permit or

9

certificate issued under subchapter IV of this chapter, or (B) any rule or regulation issued by the United States Postal Service under this chapter, shall be subject to a civil penalty of not to exceed $1,000 for each such violation, except that a person who operates aircraft for the carriage of persons or property for compensation or hire (other than an airman serving in the capacity of an airman) shall be subject to a civil penalty of not to exceed $10,000 for each violation of subchapter III, VI, or XII of this chapter, or any rule, regulation, or order issued thereunder, occurring after December 30, 1987.

\* \* \*

### (3) Administrative assessment

#### (A) General authority

Upon written notice and finding of a violation by the Administrator, the Administrator, or the delegate of the Administrator, may assess a civil penalty for a violation of subchapter III, V, VI, or XII of this chapter or subsections (c) and (d) of this section, section 1501 or 1515(e)(2)(B) of this title or any rule, regulation, or order issued thereunder.

\* \* \*

#### (C) Continuing jurisdiction of district courts

Notwithstanding subparagraph (A), the United States district courts shall have exclusive jurisdiction of any civil penalty initiated by the Administrator---

(i) which involves an amount in controversy in excess of $50,000.

\* \* \*

> (iv) in which a suit for injunctive
> relief based on the violation giving rise to
> the civil penalty has also been brought.

49 App. U.S.C.A. § 1471(a)(1), 1471(a)(3)(A), 1471(a)(3)(C)(i)
and (iv) (West 1994).

The defendants are charged with fifty-three violations of
regulations promulgated under 49 U.S.C.A. § 1430(a)(2), (4) and
(5).  Pursuant to 49 App. § 1471(a)(1), each of these violations
carries a civil penalty not to exceed $10,000.  Accordingly,
defendants Alan Emerson and Emerson Aviation are each subject to
a civil penalty not to exceed $530,000.  Because the amount in
controversy as to each defendant exceeds $50,000 the court has
exclusive jurisdiction over the plaintiff's civil penalty claims
under 49 App. § 1471(a)(3)(C)(i).  Further, under 49 App. §
1471(a)(3)(C)(iv), the court has exclusive jurisdiction of the
plaintiff's claim for injunctive relief because this claim is
based on the violations giving rise to the civil penalties at
issue.


II.  Exhaustion of Administrative Remedies

Section 1471(a)(1) specifies the circumstances in which
civil penalties must be determined by the administrative agency:

> The amount of any such civil penalty which relates to
> the transportation of hazardous materials shall be
> assessed by the Secretary, or his delegate, upon
> written notice upon a finding of violation by the

11

> Secretary, after notice and an opportunity for a hearing. . . . The amount of any such civil penalty for any violation of any provision of subchapter IV of this chapter, or any rule, regulation, or order issued thereunder, or under section 1482(i) of this title, or any term, condition, or limitation of any permit or certificate issued under subchapter IV of this chapter shall be assessed by the Board only after notice and an opportunity for a hearing and after written notice upon a finding of violation by the Board.

Section 1471(a)(1) requires an administrative assessment of a civil penalty

> in only three instances: (1) if the penalty "relates to the transportation of hazardous materials," (2) if the penalty is imposed for "violation of any provision of subchapter IV of this chapter," which relates to the economic regulation of air carriers, or (3) if the penalty issues for violations under 49 U.S.C. § 1482(i), which governs establishment of through service and joint fares within the states of Alaska and Hawaii and for overseas flights.  49 U.S.C. § 1471(a)(1); see United States v. Kilpatrick, 759 F.2d 1250, 1252-53 (5th Cir. 1985).

United States v. Gaunce, 779 F.2d 1434, 1436 (9th Cir. 1986), cert. denied, 478 U.S. 1003 (1988).    The defendants argue that the NTSB must impose a civil penalty before the jurisdiction of the federal district court can be established under 49 U.S.C. § 1471(a).  Defendants' Motion to Dismiss at 1-3.

Where a civil penalty is sought for alleged violations of regulations promulgated under subchapter VI, no administrative assessment is required by section 1471(a)(1).  Gaunce, 779 F.2d at 1436.

Because the civil penalties at issue in this case are sought for alleged violations of regulations promulgated under sub-chapter VI, the court finds that no administrative assessment of such penalties is required for the court to exercise jurisdiction pursuant to 49 App. U.S.C.A. § 1471(a)(3)(C)(i) and (iv).

### III.  The "Stale Complaint" Rule

The defendants next assert that the plaintiff's action is barred by the NTSB's "stale complaint" rule, set forth at 49 C.F.R. § 821.33 (1994), because the complaint was brought more than six months after the offenses at issue allegedly occurred.

> The provisions of [49 U.S.C. Part 821] govern all air safety proceedings, including proceedings involving airman medical certification, before a law judge on petition for review of the denial of any airman certificate or on an appeal from any order of the [FAA] Administrator amending, modifying, suspending or revoking any certificate.  The provisions of this part also govern all proceedings on appeal from an order of the Administrator imposing a civil penalty on a flight engineer, mechanic, pilot, or repairman, where the underlying violation occurred on or after August 26, 1992, and all proceedings on appeal to the Board from any order or decision of a law judge.

49 C.F.R. § 821.2 (1994).

Section 821.33 is a provision governing administrative air safety proceedings which does not apply to claims properly brought in a federal district court.  Because the plaintiff's claims are properly before the court pursuant to 49 App. U.S.C.A.

13

§ 1471(a)(3)(C)(i) and (iv), section 821.33 does not apply to the plaintiff's action.

#### IV. Double Jeopardy

Defendants Alan Emerson and Emerson Aviation next assert that their "rights to defend properly are before an administrative law judge until the FAA's complaint has been adjudicated. To subject [them] to this Court's jurisdiction now places [them] in the unconstitutional position of 'double jeopardy.'" Defendants' Motion to Dismiss, ¶ 7. They contend that "[b]y seeking such a penalty simultaneously with an order of emergency revocation the Plaintiff is pursuing an excessive degree of enforcement amounting to harassment and intimidation." Id., ¶ 3. Further, in their motion to reconsider they argue that the combination of the emergency revocation of Alan Emerson's airman certificate and the civil penalties sought by plaintiff implicates the double jeopardy clause. Defendants' Motion to Reconsider at 3-6.

"[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440 (1989). Under the

14

double jeopardy clause, "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." Halper, 490 U.S. at 448. A civil penalty qualifies as punishment in "the rare case" where the penalty is "overwhelmingly disproportionate" to the damage caused. Halper, 490 U.S. at 449. "Removal of persons whose participation in [government] programs is detrimental to public purposes is remedial by definition." United States v. Bizzell, 921 F.2d 263, 267 (10th Cir. 1990).

The court notes that civil penalties are not being sought for the conduct which gave rise to the May 12, 1992, revocation. Rather, the plaintiff alleges that Alan Emerson and Emerson Aviation continued to violate air safety regulations subsequent to the revocation of Alan Emerson's airman certificate. The violation of such regulations would obviously be detrimental to public purposes. Therefore, the court finds that the plaintiff's civil penalty claims against Alan Emerson and Emerson Aviation are remedial rather than punitive and the double jeopardy clause is not implicated by those claims. Further, the court finds that the double jeopardy clause is not implicated in this case because the civil penalties sought are not overwhelmingly dispropor- tionate to the damage inherent in the conduct alleged.

15

## Conclusion

For the reasons set forth above, the court finds that it may properly exercise subject matter jurisdiction over the plaintiff's action.  Therefore, although the motion to reconsider is granted, the motion to dismiss (document no. 11) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

April 21, 1995

cc:  Patrick M. Walsh, Esquire
     John P. Kalled, Esquire

16