## Urciuolo v. PennDOT

*Matthew R. Gover,* for appellant.
*Matthew X. Haeckler,* for the Commonwealth.

KLEINFELTER, *J.,* July 24, 1996—This suspension of operating privilege appeal arises out of the application of section 1532(c) of the Motor Vehicle Code, which reads:

"The department shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state."[1] 75 Pa.C.S. §1532(c)

In this case, appellant Nancy S. Urciuolo was charged with forging prescriptions to obtain Hydrocodone APAP

---

1. The period of suspension is six months for the first offense, one year for the second and two years for the third. 75 Pa.C.S. §1532(c)(l).

and other Schedule III controlled substances on 18 different dates between March 28, 1994 and January 11, 1995. On May 18, 1995, appellant entered a plea of guilty to 18 counts of obtaining a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge, 35 P.S. 780-113(a)(12).[2] She was sentenced to 23 and one-half months of probation. On July 20, 1995, the Bureau of Driver Licensing notified petitioner that her driving privilege was being suspended for a period of six months.

Petitioner predicates her appeal of the suspension on the claim that it violates the double jeopardy clause of both the Pennsylvania (Article 1, Section 10) and Federal (Amendment V) Constitutions. Specifically, she claims that her license suspension constitutes a second punishment for the same offense.

Appellant must first concede that the license suspension constitutes a civil penalty. In *Plowman v. PennDOT,* 535 Pa. 314, 635 A.2d 124 (1993), in a decision rejecting a challenge to the constitutionality of section 13(m) of the Drug Act,[3] our Supreme Court held: "Section 13(m) of the Act is merely a civil con-

---

2. This subsection states:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

(12) The acquisition or obtaining of possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge.

3. 35 P.S. §780-113(m), now repealed and superseded by 75 Pa.C.S. §1532(c), provided that any person "who possesses, sells, delivers, offers for sale, holds for sale or gives away any controlled substance . . . shall have his or her operating privilege suspended." Subsection (l) provides that the suspension shall be for a period of six months for the first offense.

sequence of a criminal violation." *Id.* at 321, 635 A.2d at 128.

In *Plowman,* the constitutional challenge was premised on a claim that the suspension provision constituted cruel and unusual punishment in violation of both the Eighth Amendment to the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution. Since the court held that the sanction imposed was not a criminal punishment, it concluded that the constitutional proscriptions against "cruel and unusual punishment" would not apply. The court also held that the legislation was constitutional because it had a rational basis in promoting a legitimate state interest or public value. *Id.* at 320, 635 A.2d at 126-27.

In the case sub judice, appellant adopts a new tact in challenging the legislation. Appellant begins by a reference to *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In that case, the Supreme Court considered whether and under what circumstances a civil penalty might constitute punishment for the purpose of a "double jeopardy" analysis. The court concluded that the Federal Civil False Claims Act violated the double jeopardy clause as applied to the defendant since the statutorily authorized recovery of more than $130,000 bore no rational relation to the sum of the government's loss which was approximated at no more than $16,000.

The court in *Halper* first noted that it had often "held that the double jeopardy clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *Id.*, 490 U.S. at 440, 109 S.Ct. at 1897. In focusing on the third of these proscriptions, the court recognized that government may impose both

a criminal and a civil sanction for the same transgression. Nevertheless, it concluded that a civil penalty may constitute "punishment" for purposes of the double jeopardy clause.

"This constitutional protection is intrinsically personal. Its violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state.

"In making this assessment, the labels 'criminal' and 'civil' are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. . . . [F]or the purposes of assessing whether a given sanction constitutes multiple punishment barred by the double jeopardy clause, we must follow the notion where it leads. . . . To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purpose that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

"These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. (citation omitted) Furthermore, '[r]etribution and deterrence are not legitimate nonpunitive governmental objectives.' (citation omitted) From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. (citation omitted) . . . We therefore hold that under the double jeopardy

clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.,* 490 U.S. at 447-49, 109 S.Ct. at 1901-1902.

In announcing its decision, the court in *Halper* stressed that its rule was reserved for the rare case "where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Id.,* 490 U.S. at 449, 109 S.Ct. at 1902.

More recently, the Supreme Court had occasion to apply its holding in *Halper* to the question of forfeiture. In *Austin v. U.S.,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the court was asked to determine if the forfeiture of defendant's home and auto body shop violated the excessive fines clause of the Eighth Amendment. The district and court of appeals had held the Eighth Amendment inapplicable to in rem civil forfeitures. In *reversing,* the Supreme Court held that the sanction of forfeiture was intended both to deter and punish; "we cannot conclude that forfeiture . . . serves only a remedial purpose." *Id.,* 509 U.S. at 622, 113 S.Ct. at 2812, 125 L.Ed.2d at 505.

In this case, appellant contends that the application of section 1532(c) of the MVC to her is punitive and serves no remedial purpose. Rather, she claims her suspension can only be explained as serving retributive or deterrent purposes. She claims this conclusion is confirmed by our Supreme Court in *Plowman, supra.* In conducting its "rational basis" analysis, the court considered the legitimate state interest which the challenged statute sought to promote. The court also reviewed the legislate debate before the House of Rep-

resentatives prior to final passage of the bill. It concluded that the legislative interest was protecting against the proliferation of drug use and observed, "the prospect of losing one's driver's license *may deter* a potential drug user from committing that first drug offense." *Id.* at 320, 635 A.2d at 127. (emphasis added) As we noted previously, the court concluded that the license suspension was not a criminal penalty.[4] Nevertheless, the stated purpose of deterrence runs afoul of the holding in *Halper,* appellant claims.

The Bureau of Licensing on the other hand directs us to *Zanotto v. PennDOT,* 83 Pa. Commw. 69, 475 A.2d 1375 (1984), where the Dauphin County Court was affirmed in holding that the habitual offender provision of the Motor Vehicle Code did not violate the double jeopardy clause of the Pennsylvania Constitution. Commonwealth Court concluded that license suspensions for habitual offenders "are remedial sanctions which are civil in nature, designed to protect the public from unsafe drivers . . . ." *Id.* at 71, 475 A.2d at 1376.[5]

---

4. In a footnote, the Supreme Court concluded that even if the suspension were a criminal punishment, it would not be grossly disproportionate so as to implicate the cruel and unusual punishment proscriptions in the Eighth Amendment and Article 1, Section 13 of the Pennsylvania Constitution.

5. The bureau also cites *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) n.1, for the proposition that the Fifth Amendment "*only*" applies to imprisonment and monetary penalties.

Actually, what the note says is that the Fifth Amendment "covers," that is to say includes, these areas. What the court held in *Kurth Ranch* was that a tax assessment of eight times the value of marijuana seized was a form of double jeopardy and that the tax as applied in this case was unconstitutional as a successive punishment for the same offense.

It is easy to comprehend the result in *Zanotto.* In cases where the underlying criminal conviction is related to the operation of an automobile, the remedial purpose of license suspension is obvious. Even where the underlying offense involves possession or trafficking in drugs, coupled with the use of an automobile, see *e.g., PennDOT v. Volmer,* 41 Pa. Commw. 286, 398 A.2d 1098 (1979), the sanction of license suspension can be readily justified as remedial.

But where a violation of the Drug Act bears no link to a motor vehicle, the remedial benefit from license suspension is far more diaphanous. We agree with appellant that it is difficult to comprehend the remedial benefit where one forges a prescription in violation of subsection 113(a)(12) of the Drug Act and, coincidentally, has a driver's license. We see no more remedial effect of a suspension under subsection (a)(12) then we would under subsections (13), (14) and (15) which prohibit the sale or dispensing of controlled substances by doctors or pharmacists except as authorized by law.[6]

Based on the foregoing analysis, we could be persuaded that appellant has a viable double jeopardy challenge to section 1532(c) of the Vehicle Code as applied to her conviction under subsection 113(a)(12) of the Drug Act. Our research, however, persuades us that Commonwealth Court has already decided this issue to the contrary.

In *PennDOT v. Wylie,* 162 Pa. Commw. 219, 638 A.2d 433 (1994), defendant was convicted under sub-

---

6. As far as we know, the bureau does not suspend for convictions under these sanctions.

section 113(a)(12) of the Drug Act ("fraudulently obtaining prescription narcotics"). As a consequence, PennDOT suspended her operating privileges. On appeal Wylie raised the constitutional challenge under the equal protection clause.[7] Essentially, she claimed that license suspensions imposed on rural residents impacted more severely than those imposed on urban drivers. Commonwealth Court rejected these claims.

Although the *Wylie* equal protection challenge was based on different factors than those presented here, and although we have explained our empathy with appellant herein, we are constrained to affirm the suspension in this case. For various reasons, our appellate courts have upheld constitutional challenges—due process, cruel and unusual punishment, equal protection—to every suspension imposed under 75 Pa.C.S. 1532— even, as in *Wylie,* for violations under subsection 113(a)(12) of the Drug Act. If some exception is to be carved out under the facts or legal premises presented in this case, it remains for our appellate courts to do so.

Accordingly, we enter the following:

## ORDER

And now, July 24, 1996, this license suspension appeal is denied and the suspension order of the Bureau of Driver Licensing is affirmed.

---

7. She also raised an issue of substantive due process.