GLICKSTEIN, Judge.
This is an appeal from an order dismissing criminal charges against appellees on the ground of double jeopardy. We reverse, concluding that the earlier judgment was a forfeiture.
In the earlier forfeiture action, the trial court concluded:
After review of the relevant statutes and consideration of the evidence presented at trial, this Court finds that ADAMS and MEISNER as officers, directors and shareholders of MIA engaged in conduct which violated Chapter 812, the omnibus theft act. Additionally, the Petitioner proved at trial that the scheme conducted by MIA at the direction of ADAMS and MEISNER constituted a pattern of racketeering activity in violation of the Florida RICO Act.
The evidence showed that both ADAMS and MEISNER intentionally, repeatedly and schematically misappropriated carriers’ premium and claim funds from on or about 1986 until close to the end of 1990. Wood, an employee of MIA from September 30,1985 through June 6,1989, testified at trial that ADAMS and MEISNER were aware that premiums were used to pay operating expenses even before Wood was employed at MIA. Wood further explained that what should have been paid to insurance carriers was used to pay bills, rent and salaries and “everybody knew it.” In fact, the evidence showed that on June 27, 1989, ADAMS and MEISNER were informed MIA was operating at a deficit of $551,000.00 resulting from these misappropriations. The evidence also showed that none of the carriers were aware that their insurance premium or claim money was being utilized to pay expenses of MIA and that no carriers gave MIA their permission to use premium or claim money to pay MIA operating expenses.
Additionally, MIA, ADAMS and MEIS-NER intentionally filed false and misleading annual financial statements with the FDOI for the years 1986-1990. These statements were signed and verified by ADAMS and MEISNER each year except for the statement filed on March 1, 1990 which was signed by MARTIN and MEIS-NER. The March 1, 1990 statement contained the $1.5 million stock subscription placed under “Notes Receivables.” The evidence established that ADAMS and MEISNER intentionally and repeatedly overvalued MIA’s net worth on FDOI annual financial statements. Although ADAMS did not sign the annual statement to FDOI for year ending December 31, 1989, he knew MIA could not stay in operation without a positive net worth and he knew and took part in sending false statements to FDOI so that MIA could remain in business. Further, Eltoft’s testimony established that ADAMS and MEISNER attended a meeting in which the proposed *935 stock subscription was discussed. There they decided to increase the $1.2 million stock subscription so that they would be, “in the black” because they knew there were insufficient funds. ADAMS knowingly benefitted from the fraudulent use of the stock subscription as it enabled him to negotiate a buyout agreement to remove himself from the corporation without paying for officer’s loans. Additionally, ADAMS knew when he negotiated the buyout that his officers’ loans were funded by premium and or claims monies to which he was not entitled. Consequently, this Court finds that ADAMS and MEISNER knowingly and repeatedly utilized premium and claim monies of insurance carriers with the intent to unlawfully temporarily deprive the carriers of the right or benefit of the money and appropriate the property for their own use in an effort to keep MIA in business. Under § 812.014(1), even a temporary deprivation of property constitutes theft. Additionally, ADAMS and MEISNER as officers, directors and shareholders of MIA engaged in a course of conduct that violated the Florida RICO Act. Thus, this Court finds that the assets or income derived from or used during the course of racketeering are subject to forfeiture under § 895.05(2)(a).
In the case sub judice, the promissory note in the original principal amount of $279,500.00 having a remaining balance of $157,905.02 plus accrued interest as well as the payments on said note deposited in the registry of the court are assets or income derived from, or used during the course of racketeering activity and are therefore for-feitable.
As a result, it made the following judgment:
Accordingly it is hereby,
ORDERED AND ADJUDGED that the Court finds in favor of the Petitioner, State of Florida Department of Legal Affairs, and against the Respondents with regard to the forfeiture of the promissory note in the original principal amount of $279,-500.00 plus interest.
IT IS FURTHER ORDERED AND ADJUDGED that the funds paid into the court registry as partial payment on the $279,500.00 promissory note, including interest, are hereby forfeited.
IT IS FURTHER ORDERED AND ADJUDGED that the remaining balance on said note is hereby forfeited.
IT IS FURTHER ORDERED AND ADJUDGED that ADAMS and MEIS-NER be jointly and severally liable for the sum of $279,500.00 less the amount presently in the registry of the court and less the amount due on the subject promissory note as of this date. The amount to be determined at a subsequent hearing thereon.
[[Image here]]
IT IS FURTHER ORDERED AND ADJUDGED that this Court retains jurisdiction to direct the proper distribution of the proceeds of forfeiture pursuant to § 895.09, Florida Statutes.
In Helvering v. Mitchell, 303 U.S. 391, 400, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938), Justice Brandeis wrote:
Forfeiture of goods or their value and the payment of fixed or variable sums of money are other sanctions which have been recognized as enforceable by civil proceedings since the original revenue law of 1789. Act of July 31, 1789, c. 5, § 36, 1 Stat. 29, 47.
The above civil judgment was nothing more than a forfeiture of ill-gotten gains, thus subsequent criminal prosecution was not precluded. See United States v. Ursery, — U.S. -, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).
Appellees mistakenly rely upon United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Appellees contend double jeopardy precludes their criminal prosecution because in the earlier forfeiture proceeding the state sought, then abandoned during trial, a claim for treble damages on behalf of municipalities. Actually, there is much in Halper to refute such contention. See the discussion therein of United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943).
GUNTHER, C.J., and DELL, J., concur.