494

## CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Richard Bernard Wright, Jr.

August 7, 1995

Case No. M-95-1786

BY JUDGE DONALD W. LEMONS

On April 29, 1995, Richard Wright, Jr., was arrested for driving under the influence of alcohol in violation of Virginia Code § 18.2-266 ("DUI"). Following the defendant's arrest and upon a determination that his blood alcohol content was greater than .08 grams per 210 liters of breath, Wright's operator's license was suspended for seven days pursuant to Virginia Code § 46.2-391.2 (Administrative License Suspension, "ALS"). Wright moves the court to dismiss the warrant charging DUI on the grounds that he has been twice placed in jeopardy in violation of the Fifth Amendment to the United States Constitution, namely, the "Double Jeopardy Clause." The Commonwealth asserts that both the ALS action and the DUI prosecution are lawful and do not place the defendant twice in jeopardy. The court held an evidentiary hearing on July 14, 1995, and took the matter under advisement. The Court has considered the evidence presented, the memoranda of counsel, and many opinions of other trial courts and appellate courts in Virginia and elsewhere.

"The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for

the same offense." *United States v. Halper*, 490 U.S. 435 (1989). In order to resolve the questions presented in this case the court must ask the following questions:

1. Does the ALS action result in punishment?

2. Do the ALS action and the DUI prosecution constitute the same proceedings or are they separate proceedings?

3. Do the ALS action and the DUI prosecution provide punishment for the same offense?

### Does the ALS Action Result in Punishment?

Cases decided prior to *Halper* are of limited utility in the analysis of whether the ALS action results in punishment. No longer does the nomenclature of "civil," "criminal," or "administrative" have dispositive affect upon the underlying issue of whether a sanction is punitive in nature. Furthermore the distinction between a "right" and a "privilege," is no longer helpful in resolving whether a sanction is punitive in nature.

In *Halper* the defendant was sentenced to two years in prison and fined $5,000 for criminal violations of the False Claims Act. Thereafter, the Government filed a civil false claims action against the defendant. The Court stated that the amount of the civil penalty was "entirely unrelated" to the actual damages suffered and the expenses incurred by the Government. The Court identified the issue before it as follows:

> whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes "punishment" for the purpose of double jeopardy analysis.

*Halper*, 490 U.S. at 443. Further, the Court stated:

> the labels "criminal" and "civil" are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties . . . . the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment . . . .

> We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. [Citations omitted.] Furthermore, "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives." [Citations omitted.] From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. [Citations omitted.]

*Halper*, 490 U.S. at 448.

If there were any doubt following *Halper* concerning the definition of "punishment," the Court sought to emphasize the analysis in *Austin* v. *United States*, 113 S. Ct. 2801 (1993). The case involved a challenge to an in rem forfeiture after a conviction of drug offenses. The challenge was based upon the Eighth Amendment prohibition against excessive fines. The Court affirmed the reasoning of *Halper* stating:

> Fundamentally, even assuming that [the forfeiture provisions] serve some remedial purpose, the Government's argument must fail. "A civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Halper*, 490 U.S. at 448, 109 S. Ct. at 1902 [emphasis added].

*Austin*, 109 S. Ct. at 2812. It is the Court's "emphasis added" which is most significant.

Finally, the Court addressed the issue once again in *Department of Revenue of Montana v. Kurth Ranch*, 114 S. Ct. 1937 (1994). The Court stated the significance of the case as follows:

> This case presents the question whether a tax on the possession of illegal drugs assessed after the State has imposed a criminal penalty for the same conduct may violate the constitutional prohibition against successive punishments for the same offense.

*Kurth Ranch*, 114 S. Ct. at 1941.

> Montana no doubt could collect its tax on the possession of marijuana, for example, if it had not previously punished the taxpayer for the same offense, or indeed, if it had assessed the tax in the same proceeding that resulted in his conviction.

*Kurth Ranch*, 114 S. Ct. at 1945.

> This drug tax is not the kind of remedial sanction that may follow the first punishment of a criminal offense. Instead, it is a second punishment within the contemplation of a constitutional protection that has "deep roots in our history and jurisprudence," *Halper*, 490 U.S. at 440, 109 S. Ct. at 1897, and therefore must be imposed during the first prosecution or not at all. The proceeding Montana initiated to collect a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy a second time "for the same offence."

*Kurth Ranch*, 114 S. Ct. 1948.

According to the United States Supreme Court in the cases cited above, unless the purpose can be fairly stated to be *solely* remedial, then the significant deprivation of an operator's permit (a protected property interest) in the ALS action is "punishment" as the Court has "come to understand the term."

Legislative history as well as statutory construction aid in resolving the inquiry. Senate Joint Resolution 172 authorized the study of administrative license suspension for defendants charged with DUI. Senate Document No. 8 is entitled "Administrative Revocation of Driver's Licenses," and represents the work of The Department of Motor Vehicles, VASAP, and the Transportation Safety Board in fulfilling its responsibilities pursuant to the Joint Resolution. The report favored ALS and offered as a basis for the statutory scheme the following rationale:

> *Deterrence*: Many of those testifying or submitting written comments believe administrative license revocation serves not only as a *general deterrent* to potential drunk/drugged drivers, but also as a *specific deterrent* to those previously convicted of DUI. However, many felt that in order for this process to be effective, *the action must occur immediately and result in punishment* severe enough to discourage drivers from ever driving intoxicated or under the influence of drugs in the first place. [Emphasis supplied.]

Courts should examine carefully that which is offered as legislative history. Often committee reports and staff documents reflect the views of persons other than the legislators who voted on the measure. However, in

this instance the near unanimity of support for the stated purpose of "deterrence" and "punishment" convince this Court that the legislature did not act for "solely remedial purposes."

Additionally, the clear meaning and effect of §§ 46.2-391.2 and 46.2-391.4 demonstrate that remedial concerns cannot be the sole purpose of the legislature in enacting the ALS provisions. In the ALS action the Clerk of the General District Court shall return the defendant's license at the end of the seven day period unless the probable cause determination is appealed and overruled during the same period. There is no requirement for alcohol evaluation or treatment during the seven day period and no mechanism to determine if the defendant poses a threat to the health and safety of the community. If the defendant was a threat to the health and safety of the community at the outset of the suspension, there is no reason advanced by the Commonwealth for a determination that he is no longer a threat at day seven or any other day.

Pursuant to *Halper, Austin & Kurth Ranch* and consistent with the stated legislative purpose and the clear effect of the ALS action, the Court determines that the suspension pursuant to § 46.2-391.2 constitutes punishment for the purposes of double jeopardy analysis.

### Do the ALS Action and the DUI Prosecution Constitute the Same Proceedings or Are They Separate Proceedings?

Having determined that the ALS proceeding results in punishment, the court must determine if the effort to prosecute the defendant on the DUI charge is a "separate proceeding" from the ALS action. The Double Jeopardy Clause is not implicated if multiple punishments are rendered in the "same proceedings."

It is clear that both proceedings must be judicial in nature in order to invoke double jeopardy analysis. See *Wild v. Commonwealth*, 18 Va. App. 716 (1993). Code § 46.2-391.2 provides in part as follows:

> If a breath test is taken pursuant to 18.2-268.2 or any similar ordinance of any county, city or town and the results show a blood alcohol content of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath, or the person refuses to submit to the breath test in violation of 18.2-268.3 or any similar local ordinance, and upon issuance of a warrant by the magistrate for a violation of 18.2-266 or 18.2-

268.3, or any similar local ordinance, the person's license shall be suspended immediately for seven days . . . .

The magistrate is a judicial officer for this purpose and his decision is pursuant to a judicial proceeding. See Article VI, § 8, Virginia Constitution; Va. Code § 19.2-48.1; *Penick v. Ratcliff*, 149 Va. 618 (1927).

In the case of *United States v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir. 1994), the court dealt with a criminal prosecution and a civil forfeiture action and stated:

> We fail to see how two separate actions, one civil and one criminal, instituted at different times, tried at different times before different factfinders, presided over by different district judges, and resolved by separate judgments, constitute the same "proceeding." In ordinary legal parlance, such actions are often characterized as "parallel proceedings," but not as the "same proceeding." A forfeiture case and a criminal prosecution would constitute the *same* proceeding if they were brought in the same indictment and tried at the same time. The government could have sought criminal forfeiture in this case pursuant to [a federal criminal forfeiture statute]. If it had done so and included the forfeiture count in the same indictment as the other criminal counts and then proceeded to trial against the defendants on all counts, the forfeiture case and the criminal case would have constituted the "same proceeding." However, the government chose to proceed against the claimants on two separate fronts — in two separate, parallel proceedings . . . . We are not willing to whitewash the double jeopardy violation in this case by affording constitutional significance to the label of "single, coordinated prosecution."

*$405,089.23 U.S. Currency*, 33 F.3d at 1216-17.

In the recently decided case of *United States v. Ursery*, No. 94-1127, 1995 WL 411189, (6th Cir. July 13, 1995), the government sought civil forfeiture of the home owned by the defendant and his wife because of use of the property to grow marijuana. The matter was settled with the government by a civil judgment for $13,250.00 which was paid by defendant and his wife. Shortly thereafter the government indicted the defendant on criminal charges based upon the same conduct, namely, manufacture of marijuana.

The court had little trouble finding that the civil settlement of the forfeiture action was "punishment" for double jeopardy purposes. Additionally, the court had little trouble finding that the two actions were for the "same offense" pursuant to *United States* v. *Dixon*, 509 U.S. ____ , 113 S. Ct. 2849 (1993), and *Blockburger* v. *United States*, 284 U.S. 299 (1932). The court turned to the next issue, namely, were the two actions part of a single coordinated proceeding. As the court noted:

> The Supreme Court has made clear that the government may seek and obtain both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding. *Halper*, 490 U.S. at 450.

Indicating that the court must examine the facts and avoid simple labels, the court found that:

> The civil forfeiture proceeding and the criminal proceeding were instituted four months apart, presided over by different district judges, and resolved by separate judgments. The district court found these two proceedings to be part of a "single, coordinated proceeding" without providing any factual support for this determination. As a matter of principle, applying a label to something does not make it so. Without a reasonable analysis of the indicia of coordination, we do not believe these two proceedings logically become part of a single, coordinated procedure merely by labeling them as such. Similar to the Ninth Circuit, we find that applying the label of "single, coordinated prosecution" to the facts of this case simply goes too far. The civil forfeiture proceeding and the criminal prosecution were two separate proceedings for purposes of double jeopardy analysis.

The Virginia Court of Appeals considered a similar issue in the case of *Small v. Commonwealth*, 12 Va. App. 314 (1991). Therein the Commonwealth initiated simultaneously civil and criminal contempt proceedings against the defendant for violation of a prior decree of court. Criminal proceedings were held after civil proceedings because of problems related to proper service upon the defendant in the criminal case. The court heard the civil contempt charges and imposed a $3,000 fine upon the defendant in addition to attorney's fees to the Commonwealth and restitution to customers.

The defendant sought dismissal of the criminal contempt proceedings on the grounds that it violated the bar against double jeopardy. The majority said:

> While it is true that both criminal and civil sanctions may be imposed as a result of the same conduct, the double jeopardy clause bars the imposition of two separate penalties if both are punitive. The labels "criminal" and "civil" are not of great importance in determining whether a later punishment is barred by the double jeopardy clause. Furthermore, it is not the "fact of punishment but rather its character and purpose" that distinguishes civil and criminal contempt. The punishment for civil contempt is remedial and for the benefit of the injured party. The punishment for criminal contempt, however, is punitive, "to vindicate the authority of the court." [citations omitted] . . . .
> The double jeopardy clause becomes operative if one of the sanctions "may not fairly be characterized as remedial" and both sanctions may be characterized only as either "a deterrent or retribution." A sanction is not "remedial" if it "bears no rational relation to the goal of compensating" the injured party, which may include the government, for its loss. [Citations omitted.]

*Small*, 12 Va. App. at 317.

The Court determined that there was no remedial basis for the court's award of the penalties; consequently, the penalties must be determined to be punitive in nature.

In order for the court to reach its conclusion, it must have determined that the proceedings were "separate." This conclusion does not specifically appear in the majority opinion; however, it is confirmed in the dissent when the author notes: "Assuming, however, that the present case must be viewed as involving two separate proceedings . . . ." *Small*, 12 Va. App. at 321.

A comparison of the ALS action and the DUI prosecution reveals the following:

a. ALS is civil in nature, the DUI prosecution is criminal and different case numbers are assigned to each matter;

b. The findings in the ALS action cannot be used in the DUI prosecution;

c. Different judicial officers may be involved. The ALS decision is "automatic" upon determination that the defendant's breath test pursuant to § 18.2-268.2 or any similar ordinance shows "a blood alcohol content of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath and a warrant issues from the magistrate charging violation of § 18.2-266 or a similar ordinance. (The suspension can also occur upon a finding that the defendant refused to submit to a breath test and upon issuance of a warrant charging a violation of § 18.2-286.3.) The appeal of the ALS action goes from the magistrate to the General District Court where the arrest was made. The DUI prosecution is docketed in the venue where the offense occurred which may be different than where the arrest occurred. For example if the arresting officer is in hot pursuit the arrest for the offense of DUI in the City of Richmond could take place in an adjoining county such as Henrico County. In that event, the DUI prosecution would take place in the venue where the offense occurred, namely, the City of Richmond; whereas the ALS action would take place where the arrest occurred, namely, Henrico County. In the case of a juvenile, the DUI prosecution proceeds in the Juvenile and Domestic Relations Court and the ALS action proceeds in the General District Court;

d. The sanction for ALS has been completed in all but the rarest of cases before the DUI prosecution is concluded and the cases are resolved in separate orders;

e. Code § 18.2-271 provides that "this suspension period shall be in addition to the suspension period provided under § 46.2-391.2;"

f. The burden of proof is on the accused in the ALS action and must be sustained by a "preponderance of the evidence," while the burden of proof is on the Commonwealth in the DUI prosecution and must be sustained by proof "beyond a reasonable doubt."

Although some of the distinctions listed above would not, by themselves, serve as the basis for the conclusion that separate proceedings are involved in the ALS/DUI scheme, taken as a whole the Court finds that it cannot conclude that these statutes employ a "single, coordinated prosecution."

### Do the ALS Action and the DUI Prosecution Provide Punishment for the Same Offense?

The United States Supreme Court in *Dixon* stated that "in both the multiple punishment and multiple prosecution contexts, this court has concluded that where two offenses for which the defendant is punished cannot

survive the 'same elements' test the Double Jeopardy Bar applies." The same elements test comes from the Court's decision in *Blockburger* v. *United States*, 284 U.S. 299 (1932), and requires examination of the two "offenses." If each offense has an element that the other does not, then double jeopardy does not apply. If only one of the offenses contains a new element and all remaining elements are the same, then one offense is a lesser included offense of the other and double jeopardy does apply. Obviously, if the offenses have identical elements the double jeopardy bar applies.

In consideration of whether the elements of the ALS action and the DUI prosecution are identical it is instructive to address whether Code § 18.2-266 provides separate offenses in each of its subsections or whether the subsections are simply methods of proving the offense of DUI.

The unpublished opinion of the Court of Appeals in *Doss* v. *Commonwealth*, Record No. 2003-93-3 (Va. App. May 9, 1995), dealt with the issue of double jeopardy in two prosecutions of the same defendant, one for DUI and the other for involuntary manslaughter. In the course of deciding the issue the Court noted that:

> we cannot determine on the record before us that the defendant had been convicted previously of violating subdivision (ii), (iii), or (iv) of Code § 18.2-266, rather than subdivision (i).

Unfortunately, the Court in *Doss* made no mention of the prior decision of the Court of Appeals in *Graham* v. *Commonwealth*, Record No. 2292-91-3 (Va. App. June 22, 1993). *Graham* is also unreported, but is widely cited and annotated in the Code for the following proposition:

> Appellant further argues that Code § 18.2-266 defines several different offenses and the trial court erroneously denied his motion to require the Commonwealth to elect the subsection on which it intended to rely. We disagree. Code § 18.2-266 defines a single offense, commonly referred to as DUI, and the subsections merely set forth the means by which the offense of driving under the influence may be proved.

In the case of *Davis* v. *Commonwealth*, 8 Va. App. 291 (1989), the Court of Appeals examined the subcategories of Code § 18.2-266. A careful review of the Court's decision reveals that subsection (i) prohibits driving while the driver has a blood alcohol concentration above the legal limit, while subsection (ii) prohibits driving while "under the influence of

alcohol." The Court's decision states that these two circumstances are separate "offenses" and observes:

> The legislative purpose of these amendments was to provide a statutory scheme within the provisions of Code § 18.2-266 and related code sections to prohibit drinking and driving under either of two separate and distinct circumstances. Code § 18.2-266(ii) prohibits driving "while under the influence of alcohol." In order to facilitate that determination, when chemical tests are performed, Code § 18.2-269 continues to provide for certain presumptions for and against the conclusion that a driver was "under the influence of alcohol" at the time of the alleged offense, that is, when he was driving.
>
> In contrast, Code § 18.2-266(i) prohibits *driving* while the driver has a blood alcohol concentration of .10 percent or more as measured by a chemical test administered pursuant to Code § 18.2-268. The presumptions contained in Code § 18.2-269 are not applicable to this offense as a result of the 1986 amendment to the code section. Thus, the inquiry under Code § 18.2-266(i) is not whether a driver was in fact "under the influence of alcohol" to a degree that his ability to drive safely was affected; rather, the issue is whether *at the time he was driving* his blood alcohol concentration was at least .10 percent as measured by a subsequently administered chemical test. [Emphasis in the original.]

*Davis*, 8 Va. App. at 297-298.

That the Court acknowledged that separate offenses could be possible under the subsections is revealed by the favorable citation of *State* v. *Knoll*, 718 P.2d 589 (Idaho App. 1986), as follows:

> [i]t has been demonstrated empirically, and it is now widely accepted, that a motorist's ability to drive safely is adversely affected by a blood-alcohol content of .10%, even though some individuals may exhibit few outwardly visible symptoms of intoxication at that level . . . . Consequently, many states have legislated directly against driving with a blood-alcohol content of .10%, *some defining it as a separate offense and some treating it as driving under the influence per se.*

*Davis*, 8 Va. App. at 297 citing *State* v. *Knoll*, 718 P.2d at 591-92 (emphasis added).

The confusion created by *Davis*, *Graham*, and *Doss* is unfortunate, but it is not necessary to resolve this confusion to address the issue before the Court today.

The elements necessary for "proof" of the ALS action are as follows:

1. The defendant must have refused a breath test or registered a blood alcohol content of .08 or higher;

2. A warrant alleging violation of § 18.2-266 or § 18.2-268.3 must issue.

The elements necessary for "proof" of the DUI prosecution are as follows:

1. The defendant must have been operating a motor vehicle;

2. The defendant must have "violated" one of the subsections of § 18.2-266.

It is not necessary to decide whether the separate subsections of § 18.2-266 provide a basis for separate offenses. It is sufficient to decide that:

1. *If* the prosecution under § 18.2-266 is based upon subsection (i) rather than (ii), (iii) or (iv), and the ALS action is based upon the blood alcohol content (per se standard), then the "same elements" exist for both the ALS and the DUI;

2. *If* the Commonwealth relies upon the *per se* standard for the ALS action and does *not* proceed under subsection (i) of § 18.2-266, then the elements of the "offenses" are different;

3. If the Commonwealth relies upon a refusal to take the test as the basis for the ALS action, its subsequent reliance on subsections (ii), (iii) or (iv) of § 18.2-266 clearly involve elements of the "offenses" that are different.

Although it is possible that the Commonwealth may trigger the double jeopardy bar to subsequent prosecution, until the Commonwealth offers its proof, the Court cannot make a determination.

## Conclusion

Many commentators including lawyers, academics, judges, and journalists have addressed questions involving the ALS/DUI statutory scheme in Virginia. It is important to remember that this Court does not have the prerogative of addressing the wisdom of the statutes, only their constitutionality.

The Court concludes that the ALS action results in "punishment," and the proceedings are separate; however the elements of the ALS action and the DUI prosecution are identical only if the Commonwealth chooses to

pursue both the ALS action and the DUI prosecution based upon the *per se* results of the blood test. The warrant in this case charges a violation of Code § 18.2-266. It remains to be seen which subsection the Commonwealth utilizes for the prosecution.

For the reasons stated above the Court denies the defendant's Motion to Dismiss. The motion may be renewed if the Commonwealth proceeds with its prosecution under subsection (i) of Code § 18.2-266.