Córdova Arone, Juez Ponente
*1069 TEXTO COMPLETO DE LA SENTENCIA
En el presente recurso de revisión, el jinete Andy Hernández (en lo sucesivo, "Sr. Hernández"), nos solicita que revisemos una resolución de la Junta Hípica de Puerto Rico emitida el 22 de octubre de 1996. Mediante la referida resolución se confirmó una determinación de la Administración de la Industria y el Deporte Hípico (en adelante "la A.I.D.H.") que suspendió al Sr. Hernández por cinco años del ejercicio de su profesión de jinete y le condenó al pago de una multa de $5,000.00. Por los fundamentos que se exponen en la presente sentencia se modifica la resolución recurrida.
I
Para poder visualizar en toda su magnitud las controversias que nos ocupan es preciso hacer un recuento de los hechos que dieron lugar al caso de autos, así como de los incidentes procesales que rodearon al mismo.
El 20 de noviembre de 1995 en el programa de carreras de caballos celebradas en el Hipódromo El Comandante el Sr. Hernández montó la potranca "Mi Vereda" en la séptima carrera de las celebradas ese día, resultando ganador. El peso oficial asignado al ejemplar era de 118 libras. En el acto de repeso, posterior a la celebración de la referida carrera, el Sr. Hernández pesó una y media (1 1/2) libras, por debajo del peso asignado al ejemplar, o sea 116 1/2 libras.
Ante esta situación, el Jurado Hípico de conformidad con el artículo 416 del Reglamento Hípico de 13 de febrero de 1990, según enmendado le impuso una multa al Sr. Hernández de $100.00 por repesarse con un "handycap" de 1 1/2 libras de menos. La multa fue debidamente pagada por el Sr. Hernández, según recibo de pago expedido por la Secretaría de Carreras de la Administración de la Industria y el Deporte Hípico.
El 29 de noviembre de 1995, nueve días después de efectuada la carrera, el señor Carlos Gómez, dueño del ejemplar "Bahía Borínquen", quien arribó en la segunda posición en la mencionada carrera, compareció ante el Jurado Hípico a denunciar ciertas irregularidades de parte del jinete Andy Hernández. Sostuvo que dichas irregularidades habían sido filmadas y podían ser observadas en la cinta videomagnetofónica grabada por la empresa operadora del Hipódromo El Comandante. Ese mismo día, el Jurado Hípico solicitó la película, la cual fue debidamente suministrada por el Sr. Juan M. Adrover, Master Control de circuito cerrado del Hipódromo El Comandante. Después de revisarla, le sometió un informe al entonces Administrador Interino, Sr. Erasmo Rodríguez.
El 1 de diciembre de 1995 el Administrador Hípico, luego de observar el video sobre la filmación de la carrera, emitió una citación y notificación de cargos dirigida a los querellados, Andy Hernández, jinete; Rafael Rohena, entrenador; Angel Figueroa Candelaria, dueño y Willie Rohena, mozo de *1070 cuadra; donde se les indicaba que de encontrarse probados los hechos imputados podría imponerles sanciones por violación a los Artículos 1918, 1922 y 1924 del Reglamento Hípico. En síntesis, la violación imputada bajo el Art. 1918 consistió en el hecho de colocar una pesa en la silla de montar luego de transcurrida la carrera y previo al procedimiento del repeso. El Administrador Hípico (en adelante, "el Administrador") señaló vista administrativa para el 12 de diciembre de 1995 asignando a la Lie. Irba Cruz Batista como Oficial Examinadora.
En adición, en esa misma fecha el Administrador emitió una orden donde: (1) no se le permitió al jinete Sr. Hernández montar los ejemplares para los cuales tenía montas asignadas, (2) no se le permitió al entrenador Rafael Rohena la participación de los ejemplares que él había entrenado. El administrador acogió una solicitud de los querellados para que se dejara sin efecto las sanciones impuestas hasta celebrar una vista administrativa.
Finalmente, y luego de varios incidentes procesales, el 28 de marzo de 1996 se celebró la vista administrativa. El día de la vista las partes tuvieron la oportunidad de ver la cinta de video de la carrera celebrada el 20 de noviembre de 1995, la cual fue estipulada por todas las partes. En adición, ese mismo día la representación legal del Sr. Rafael Rohena solicitó la desestimación de los cargos imputados a su cliente. Sostuvo que no existía prueba a los efectos de probar que el Sr. Rafael Rohena había observado cuando le entregaron la pesa al jinete Sr. Hernández. En cuanto a esta solicitud la Oficial Examinadora se reservó la decisión y expresó notificaría ésta a las partes una vez analizara sus planteamientos.
Durante la vista en su fondo las partes estipularon lo siguiente:

"El testimonio del Sr. Carlos Gómez.

2.El video de la carrera desde el desfüe hasta el repeso del jinete (marcado como exhibit 1) y con las iniciales de los abogados, [sic]

El informe del jurado, no así su contenido.

El recibo sobre la multa impuesta al jinete Andy Hernández de $100.00.

5. El informe del Juez de Pesos."

El 26 de agosto de 1996 la Oficial Examinadora rindió el correspondiente informe. Por considerarlas de suma importancia para resolver el caso de autos, transcribimos literalmente las determinaciones de hechos de la Oficial Examinadora:

"1. El 20 de noviembre de 1995, el jinete Andy Hernández con licencia número 95-43 condujo a la potranca MI VEREDA en la séptima carrera, arribando en la primera posición.

2. El entrenador era el Sr. Rafael Rohena, licencia número 95-16 y el ejemplar se encontraba bajo el control de este, [sic]

3. El Sr. Angel Figueroa es dueño del establo Kelvin Sony con licencia número 141 y dueño del ejemplar MI VEREDA..

4. Al momento de repeso el jinete Andy Hernández pesó 1 1/2 libra por debajo del peso asignado al ejemplar y por estos hechos el Jurado Hípico le impuso una multa de $100.00 dólares más un día de castigo o suspensión. (Véase informe del Jurado, 20 de noviembre de 1996).

5. De conformidad con el procedimiento establecido, una vez concluida la referida carrera, el ejemplar fue llevado al frente para desensillarlo.

6.El día 29 de noviembre de 1995, el Sr. Carlos Gómez, dueño del ejemplar BAHIA BORINQUEN, que arribó en la segunda posición en esa séptima carrera, compareció ante el Jurado Hípico a denunciar unas irregularidades por parte del jinete Andy Hernández, cuya irregularidad fue 
*1071
filmada en cinta videomagnetofónica.

7.El Jurado Hípico solicitó la película, la cual fue suministrada por el Sr. Juan M. Adrover, sometiendo el Presidente del Jurado Hípico, Ledo. Smith Monge, un informe al Administrador Interino, Sr. Erasmo Rodríguez, refiriendo el asunto, por carecer ellos de jurisdicción.

8. El Sr. Erasmo Rodríguez testificó sobre la película, cuyos visuales demuestran por sí sólo lo que ocurrió ese día.

9. La película demuestra claramente al jinete Andy Hernández en el desensillado del ejemplar, doblarse y colocar una pesa en el bolsillo de la silla.

10. Se observa además al Sr. Willie Rohena, al otro lado hablándole y levantando la tapa del otro bolsillo. Ninguno de los abogados pudo explicar a esta Oficial Examinadora que hacía el Sr. Willie Rohena allí, para quién trabajaba y si tenía licencia de mozo de cuadra; para la fecha del 20 de noviembre de 1995, de hecho no tenía licencia como mozo de cuadra. La defensa de los distinguidos letrados fue encaminada a justificar el hecho, alegando que en el área del arrancadero o "starting gate" los palafreneros tuvieron que intervenir y hacer fuerza con el ejemplar, empujándolo y en ese momento fue que se rompió el bolsillo de la silla.

11. En su testimonio el jinete Andy Hernández manifestó que tenía cuatro sillas de montar y trajo una con el bolsillo roto, alegando que fue la que usó ese día y que se rompió cuando los palafreneros trabajaban con el Ejemplar [sic] para cuadrarlo.

12. La defensa de la representación legal de los querellados estuvo basada en que celebrada la carrera el jinete Andy Hernández, en el momento que se desmontó del ejemplar, se percató de que una de las pesas se cayó, la cual fue capturada por este [sic] en el aire y luego de soltar el sobrecincho y el cincho de la silla, procedió a colocarla en el bolsillo correspondiente a los pesos para "handyeap".

13. De la prueba presentada (cinta de video magnetofónica) no se desprende a nuestro juicio que este hecho causara sorpresa alguna en el jinete Andy Hernández. De haber ocurrido los hechos en la forma alegada por los querellados, era responsabilidad del Jinete [sic] informar lo sucedido al Jurado Hípico (Artículo 419 del Reglamento Hípico); esto hubiere demostrado la buena fe de este [sic] y sus actuaciones; el no haberlo hecho, nos crea serias dudas sobre la credibilidad de lo ahora alegado.

14. Del testimonio del Sr. Mario Gallardo, Juez de Pesos, se desprende que él entregó la silla que utilizaría el jinete Andy Hernández al ayudante del entrenador o a este, [sic] con los pesos reglamentarios ya debidamente colocados (tres pesas), para llegar al peso de 118 lbs.; que los bolsilloTñó estaban rotos, pero luego del repeso, este [sic] no recibe la silla ni la examina, por lo que no pudo declarar sobre las condiciones dé~ ésta luego de la carrera."

Con estos hechos la Oficial Examinadora concluyó en su informe que el jinete Andy Hernández incurrió en violación del Artículo 1918 de la Sección XIX sobre prácticas indeseables del Reglamento Hípico, supra. Sin embargo, concluyó que nada había en la prueba que conectara al Entrenador Rafael Rohena,, por violaciones a los Artículos del Reglamento Hípico referentes a prácticas indeseables y mucho menos violación al Artículo 1004 inciso 7 del referido Reglamento.
Con fecha de 16 de septiembre de 1996, el administrador, Sr. Juan A. Alves Rueda, acogió el informe de la Oficial Examinadora y emitió la correspondiente resolución disponiendo lo siguiente:

"Se suspende indefinidamente al jinete Andy Hernández y se le impone una multa de $5,000.00, bajo lo dispuesto en el Artículo 2310 del Reglamento Hípico y la Sección 7.1 de la Ley 170 del 12 de agosto de 1988 y la Sección 24 del Reglamento Interno y de Procedimientos Adjudicativos de la Administración de la Industria y el Deporte Hípico.

Esta suspensión será efectiva a partir del lunes 23 de septiembre de 1996; la multa impuesta 
*1072
deberá pagarse en un término de veinte (20) días a partir de la notificación de esta resolución."

Presentada y acogida una moción de reconsideración solicitando, entre otras cosas, que se dejara sin efecto el castigo impuesto, el Administrador, el 23 de septiembre de 1996 emitió una "Enmienda Nunc Pro Tunc a Resolución del 16 de septiembre de 1996" sólo a los efectos de sustituir la suspensión indefinida por una suspensión por cinco (5) años. Ante esta situación, el Sr. Hernández, presentó ante la Junta Hípica un recurso de revisión donde señaló que el Administrador cometió los siguientes errores al emitir su resolución:

"1. Erró al aquilatar la prueba.

2.Erró al imponer castigo cruel e inusitado, al imponer múltiples castigos por la misma conducta, violando así la cláusula constitucional que así [sic] lo prohíbe."

El 8 de octubre de 1996 la Junta Hípica celebró una vista para discutir tanto el escrito de revisión, como la Moción de Suspensión de Castigo Impuesto. En dicha vista las partes estipularon la prueba documental que iba a ser presentada, consistiendo entre otras, transcripción de los procedimientos ante la Oficial Examinadora, la prueba de la silla de montar del querellado usada para montar a la potranca "Mi Vereda", y la cinta de video de la carrera ganada por dicha potranca. Estipularon, además, que era innecesario el desfile de la prueba testifical pues entendían que la apreciación de la cinta de video era suficiente prueba para que la Junta Hípica pudiera llegar a sus determinaciones.
El 22 de octubre de 1996, la Junta Hípica emitió una resolución confirmando el castigo y multa impuesta al jinete Andy Hernández, sin perjuicio de que dicho querellado solicitara al Administrador Hípico, transcurrido el término de dos años, a partir de esta fecha, una reconsideración del castigo impuesto, y el privilegio de una nueva licencia de jinete. Presentada oportunamente una moción de reconsideración por el peticionario, la misma fue declarada sin lugar por la Junta Hípica.
Es de esta determinación de la Junta Hípica que el Sr. Hernández recurre ante nos. En su escrito el peticionario señala que la Junta Hípica cometió cinco errores, a saber:

"1. Cometió error de derecho la Junta Hípica al negarse a aplicar a los hechos del caso la doctrina que impide la relitigación de un asunto ya adjudicado y resuelto previamente por el organismo administrativo en relación a los mismos hechos, al igual que erró al no decretar la desestimación de la querella por violaeión-a- la-cláusula constitucional que protege icontra la doble exposición.

2. Incidió la Junta Hípica al confirmar la decisión de la Administración de la Industria y el Deporte Hípico en cuanto a que el querellado-recurrente había violado las disposiciones del artículo 1918 del Reglamento Hípico, a pesar de que existe una ausencia total de prueba para sostener tal imputación.

3. La determinación de la Junta Hípica de que el recurrente violó las disposiciones del artículo 1918 del Reglamento Hípico está fundada en la errónea conclusión y apreciación de que el entrenador y el mozo de cuadra que intervinieron con el recurrente entregándole una pesa y que actuaron de común acuerdo con éste para burlarse del público apostador y de los oficiales de la Administración de la Industria y el Deporte Hípico.

4. La sanción impuesta adolece de nulidad toda vez que es contraria a las disposiciones del artículo 2310 del Reglamento Hípico.

5.La severidad de las sanciones impuestas al recurrente constituyen un castigo cruel e inusitado."

El 30 de enero de 1997 celebramos una vista oral a la cual comparecieron las partes y sus abogados. En la vista tuvimos la oportunidad de observar la cinta de video del evento hípico de 20 de noviembre de 1995, donde se apreciaban las irregularidades cometidas por el Sr. Hernández y los abogados pudieron argumentar sus respectivas posiciones. Examinados los escritos de las partes, así como el mencionado video y escuchadas ambas partes, estamos en posición de resolver. 
*1073 II
En su primer señalamiento de error aduce el recurente, Sr. Hernández, que erró la Junta Hípica al negarse aplicar a los hechos del caso la doctrina que impide la relitigación de un asunto ya adjudicado por el organismo administrativo. Sostiene a su vez que incidió al no aplicar la cláusula constitucional que protege contra la doble exposición. Entendemos no le asiste la razón. Veamos.
El examen de este primer error nos obliga a dar una breve incursión en la doctrina de cosa juzgada en el campo administrativo. En primer lugar, para que la presunción de cosa juzgada surta efecto en otro procedimiento administrativo o judicial, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre, las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron. La finalidad que recoge la doctrina es de orden público. Evitar que las cuestiones judiciales se prolonguen más de lo deseable, ponerle fin a los litigios e impedir que los ciudadanos se sometan en dos ocasiones a litigar la misma causa de acción. La consecuencia de la doctrina es que la sentencia dictada en un litigio anterior impide la litigación posterior. D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Editorial Forum, 1993, a la página 445.
En cuanto a la aplicabilidad de la doctrina de cosa juzgada a procedimientos administrativos se ha reconocido que en este ámbito su aplicación tiene tres vertientes, a saber: unos hechos ante una agencia administrativa que surgen de nuevo en un caso posterior ante la misma agencia (intragencial), los mismos hechos ante dos agencias adjudicativas (interagencial) y los mismos hechos ante una agencia adjudicativa y un caso civil ante un tribunal. Acevedo Santiago v. Western Digital, _ D.P.R. _ (1996), 96 J.T.S.42; Rodríguez Oyóla v. Machado Díaz, _ D.P.R. _ (1994), 94 J.T.S. 82; Pagán Hernández v. U.P.R., 107 D.P.R. 720. En el caso que nos ocupa el Sr. Hernández sostiene que procede la aplicación de la doctrina de cosa juzgada debido a que según alega ya fue juzgado por los mismos hechos por la agencia en ocasión anterior. En consideración a la naturaleza de los procesos y sus propósitos, y las pautas sobre la doctrina de cosa juzgada en el ámbito administrativo, sus argumentos no nos persuaden.
Como apuntamos en nuestra relación de hechos, el 20 de noviembre de 1995 el Sr. Hernández fue multado por el Jurado Hípico por infracción al Art. 416 del Reglamento Hípico al repesarse con 1 1/2 libra por debajo del peso asignado en la séptima carrera de ese día. El referido Art. 416 sostiene que "el jinete que lleve menos del peso señalado en el Programa Oficial será castigado por el jurado". Es decir, está sanción únicamente va dirigida a sancionar al jinete por no tener el peso que le fue asignado y no recoge en sí ninguna otra infracción.
Por su parte, las sanciones impuestas por el Administrador Hípico y sostenidas por la Junta Hípica fueron por infracciones al Art. 1918 del Reglamento Hípico, supra, que dispone que será sancionado todo aquel que impida por medios fraudulentos, ilegales o ilícitos el desarrollo normal de una carrera. En el caso de marras la violación de este artículo consistió en colocar una de las pesas de plomo de tres (3) libras cada una asignadas al ejemplar "Mi Vereda" una vez finalizada la carrera, permitiendo que ésta participara con ventaja indebida sobre los demás participantes de la carrera.
Como vemos, estamos ante dos infracciones totalmente diferentes. Si bien ambas tratan de prácticas indeseables dentro del hipismo, en ambos procedimientos aunque nazcan de situaciones relacionadas (como lo es el peso asignado en la carrera), requieren diferentes grados de prueba y son en sí distinguibles. En el primero de los procesos basta con la certificación del Juez de Repeso de que el jinete no posee el peso asignado; en el segundo es necesario que se pruebe que mediaron medios fraudulentos durante la carrera.
Por otro lado, sostiene el Sr. Hernández que el presente caso cumple con los requisitos subjetivos de la doctrina de cosa juzgada, es decir que existe la más perfecta identidad de cosas, de causas y de personas en ambos procedimientos. Nada más lejos de la realidad. Si bien en ambos procedimientos los cargos le fueron imputados al Sr. Hernández, ya hemos señalado que se trata de dos causas diferentes; no se trata aquí de un segundo proceso por los mismos hechos, ni se trata de un mismo proceso o de dos procesos por un mismo acto. Se trata de procedimientos diferentes que nada tiene que ver uno con el otro. Muestra de ello es que la investigación de la infracción al Art. 1918, no fue el *1074 resultado del hecho de que al momento del repeso el jinete tuviera menos del peso asignado, sino que surge luego de que el Jurado Hípico observó el video de la carrera de ese día. En consideración a lo antes expresado no incidió la Junta Hípica al no aplicar la doctrina de cosa juzgada en el presente caso.
Finalmente, es menester dejar establecido que el alcance de la protección constitucional contra la doble exposición en que fundamenta su argumento el Sr. Hernández, de ordinario sólo protege dentro de la esfera criminal, incluyendo los procedimientos contra menores, no así en los casos civiles o administrativos. Chiesa Ernesto, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Vol. II, Forum, 1992, a la página 350. Por lo que tampoco erró la agencia recurrida al negarse emplear la aludida doctrina en el caso de autos.
III
Discutiremos en conjunto el segundo y tercer señalamiento de error. Básicamente señala el Sr. Hernández que erró el Administrador al aquilatar la prueba presentada en el caso de autos. Al analizar estos señalamientos de error del recurrente resulta imperioso examinar las determinaciones de hechos de la agencia recurrida. Sin embargo, sabido es que las conclusiones e interpretaciones de los organismos administrativos siempre han sido merecedoras de gran consideración y respeto por parte de los tribunales, limitándose en el ejercicio de nuestra función revisora a determinar si la agencia actuó arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. Fuertes v. A.R.P.E., _ D.P.R. _ (1993), 93 J.T.S. 165; Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). Esa función debe llevarse a cabo sin trastocar el equilibrio de la relación agencia-tribunal y teniendo presente que las agencias descargan su obligación con el propósito de que se cumplan los fines de la política pública.
En Hilton Hotels v. Junta de Salario Mínimo, 14 D.P.R. 670 (1953) 686-687, se estableció claramente que el criterio de prueba utilizado dentro de los procedimientos administrativos es aquél denominado como "evidencia sustancial". Este concepto ha sido definido por nuestra jurisprudencia como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. En el caso antes citado el Tribunal Supremo sostuvo, por un lado, que se debe respetar el dictamen de una agencia administrativa en cuanto a la credibilidad de los testigos; por el otro, que es concluyente la determinación de la agencia administrativa cuando ésta tiene una base racional. Desde que se resolvió Hilton Hotels, supra, ese ha sido el criterio utilizado en nuestra jurisdicción.
De acuerdo con lo anterior podemos concluir que "quántum" de prueba necesario para probar un caso ante una agencia administrativa es uno menor a aquél conocido en los procedimientos civiles como "preponderancia de prueba". Por otro lado, el foro apelativo deberá confirmar la determinación administrativa en aquellos casos donde se cuestionan las determinaciones de hechos si luego de analizar la totalidad del expediente se desprende que existe evidencia sustancial que sostenga dicha determinación. See. 4.5 de la L.P.A.U., supra.
Una vez establecido el criterio de prueba que vamos a utilizar para resolver la controversia de autos nos corresponde discutir si existió evidencia sustancial para sostener la decisión del Administrador. Hemos examinado detenidámente tanto el informe de la Oficial Examinadora designada al caso, como la cinta de video donde surgen las irregularidades de la carrera hípica en controversia y no albergamos duda que los hechos por los que fue sancionado el Sr. Hernández están sostenidos por la evidencia. El video observado muestra claramente que el Sr. Hernández colocó una pesa en el bolsillo del ejemplar "Mi Vereda", una vez concluida la carrera del 20 de noviembre de 1995. En ningún momento surge del referido video que la pesa se hubiera caído al final del evento, como pretende el recurrente que resolvamos. Por el contrario puede apreciarse en el video que al terminar la carrera el jinete se dirigió al área de desensillar el caballo, tiró el látigo, se apareó y al comenzar a desensillar su silla, se le acercan a la potranca por un lado Rafael Rohena, el entrenador, y por el otro Willie Rohena, su ayudante, personas no autorizadas para estar en ese sitio. De igual forma, se observa cuando el Sr. Willie Rohena se coloca de tal forma que no deja que la cámara muestre lo que el Sr. Hernández hacía mientras desamarraba la silla por la parte inferior del caballo. Sin embargo, a pesar de su intento podemos observar que en el momento de bajarse a desamarar la silla, se baja también el Sr. Rafael Rohena, quien estaba al otro lado de la potranca y al subir hacía la silla se ve que el Sr. Hernández *1075 tiene una "cosa negra" en su mano que no la tenía antes, y la pone en el bolsillo de la silla. Ciertamente la referida "cosa negra", no era otra cosa que una de las pesas asignadas a la potranca "Mi Vereda".
Con estos hechos según brevemente relatados no albergamos duda que estas personas actuaron en común acuerdo para cometer la infracción imputada, burlándose así del público apostador y de los oficiales de la Administración de la Industria y el Deporte Hípico. 
Analizados en conjunto todos los hechos del caso de autos llegamos a la conclusión, tal como lo hizo la Oficial Examinadora, que el Sr. Hernández incurrió en violación al Art. 1918 del Reglamento Hípico vigente. Existe apoyo sustancial en el récord para avalar tal conclusión. Por otro lado, en ausencia de indicio alguno de que en la determinación de la agencia recurrida haya mediado algún tipo de prejuicio o parcialidad, sus determinaciones merecen nuestra más completa deferencia.
rv
Pasamos ahora a discutir el cuarto error alegado por el Sr. Hernández en su escrito. Arguye el recurrente que la sanción impuesta adolece de nulidad toda vez que es contraria a las disposiciones del Art. 2310 del Reglamento Hípico.
En primer lugar, debemos recordar que las agencias administrativas han sido encomendadas para aprobar reglas y reglamentos. La acción que llevan a cabo es de carácter cuasi-legislativa. El procedimiento es un medio para formular política pública. Ruiz Hernández v. Mahiqués, 120 D.P.R. 80, 85 (1982). Debe señalarse que el principio cardinal que regula las consecuencias legales de la reglamentación es que tiene "fuerza y efecto de ley". Equivale ello a decir que tiene la misma fuerza que un estatuto y obliga también a las agencias las cuales no tienen discreción para repudiarla. García v. U.P.R., 120 D.P.R. 167 (1987). En términos prácticos un ciudadano puede enfrentarse a tantas dificultades por violar una regla sustantiva o procesal como por violar un estatuto aprobado por la Asamblea Legislativa.
Así la Ley de la Industria y el Deporte Hípico del Estado Libre Asociado de Puerto Rico y la Sec. 1.6 de L.P.A.U., supra, 3 L.P.R.A. 2105, facultan a la Junta Hípica para adoptar reglamentos del deporte hípico, los cuales tendrán fuerza de ley una vez aprobados por el Gobernador de Puerto Rico y radicados en el Departamento de Estado. 
Veamos ahora la aplicación de estos principios al caso que nos ocupa.
El Artículo 2310 del Reglamento Hípico dispone:

"Cualquier persona que incurriere en cualquiera de las prácticas declaradas indeseables podrá ser castigado por la Junta, el Administrador o el jurado con multa que no excederá de $500.00, suspensión o cancelación de su licencia o declarada estorbo hípico, según sea el caso. El jurado podrá decretar la suspensión temporal de licencia en casos apropiados."

Por lo que a tenor con la disposición antes transcrita al Sr. Hernández puede ser sancionado a pagar una multa hasta $500.00 y ser suspendido de su licencia o en la alternativa ser declarado estorbo hípico. Contrario a lo señalado por el Sr. Hernández, no se trata de penas en las alternativas.
Ahora bien, al Sv. Hernández fue sancionado al pago de una multa de $5,000.00. Ello basado en el reglamento interno de la Junta Hípica, Reglamento para Regular los Procedimientos Adjudicativos de la Oficina del Administrador que en su sección 24 establece que: "toda violación a la Ley Hípica y a los Reglamentos emitidos al amparo de la misma podrá ser penalizada con multas administrativas que no excederán de cinco mil $5,000.00por cada violación".
El Reglamento Hípico, que se deriva de la ley orgánica que crea la agencia, tiene fuerza de ley una vez aprobado por el Gobernador de Puerto Rico y radicado en el Departamento de Estado. Actualmente este Reglamento fija una multa máxima de $500.00 por la infracción cometida. A pesar de que la Sec. 7.1 de la L.A.P.A.U., 3 L.P.R.A. 220,1 permite á las agencias fijar una multa hasta un máximo de $5,000 y aun mayor de así disponerlo la ley especial de que se trate, no obstante, el *1076 referido Reglamento Hípico no adopta dicha norma y no podemos avalar que se incorpore la misma por medio de un reglamento interno de la A.I.D.H., más aún cuando se trata de una sanción de carácter punitivo.
De esta forma, la multa máxima aplicable conforme a lo aquí expuesto, es la que fija como máxima el artículo 2310 del Reglamento Hípico, es decir $500.00. En consecuencia se modifica la multa fijada al Sr. Hernández y se le impone el pago de una multa de $500.00.
V
Finalmente, nos resta evaluar la alegación de castigo cruel e inusitado. Se ha señalado que la prohibición constitucional sobre castigo crüel e inusitado tiene como origen el deseo de proscribir castigos bárbaros e inhumanos, tales como los de quemar en la hoguera, decapitación y algunas otras formas de tortura que antiguamente eran más comunes. Brunet Justiniano v. Hernández Colón, _ D.P.R. _ (1992), 92 J.T.S. 45; Pueblo v. Jaimán Torres, 86 D.P.R. 700, 701, 702. Nuestra jurisprudencia ha reconocido su aplicación en situaciones tales como la prisión indefinida por desacato civil, cuando como medida reparadora deja de surtir efecto, cuando la pena se convierte en un castigo perpetuo, cuando se trate de penas desproporcionadas y arbitrarias y aplicación de penas distintas a personas en igualdad de condiciones. Amy v. Administrador Hípico, 116 D.P.R. 414 (1986).
En el presente caso la pena impuesta al Sr. Hernández de suspensión por cinco (5) años está dentro de los límites fijados en el Reglamento Hípico, que incluso provee hasta la cancelación definitiva de la licencia del jinete en caso como el que nos ocupa. Art. 2310 del Reglamento Hípico. Cuando las penas decretadas estén dentro de los límites fijados por el estatuto correspondiente no se intervendrá con la discreción de la agencia administrativa o el tribunal sentenciador, a menos que en el ejercicio de dicha discreción haya mediado pasión, prejuicio, parcialidad o mal juicio. En autos, el recurrente no ha acreditado la existencia de atenuantes para que este Tribunal pueda determinar que la pena es una excesiva y que la agencia recurrida haya cometido un abuso de discreción al imponerla. En adición a ello, la pena impuesta dispone que en un término de dos (2) años el recurrente, Andy Hernández, podrá solicitar del organismo correspondiente que se le expida una licencia.
La violación cometida por el Sr. Hernández fue deliberada y premeditada para obtener ventaja indebida en una carrera de caballos y burlar al público apostador. Recordemos que tanto el Jurado Hípico, el Administrador Hípico como la Junta Hípica de Puerto Rico tienen gran interés en evitar que se cometan actos dirigidos a defraudar al público apostador y a toda la familia hípica. De igual forma, son los llamados a velar por la pureza del proceso hípico. Por lo que en el ejercicio de su discreción deben castigar con firmeza aquél que incumple con estas disposiciones. Sólo de esta forma se logra' restaurar y preservar la confianza en el deporte hípico al que tantos puertorriqueños le dedican semana tras semana su afán, dinero y entusiasmo.
Por los fundamentos antes expuestos se confirma la suspensión de cinco años en el ejercicio de su profesión al jinete Andy Hernández, sin perjuicio de que transcurrido el término de dos años solicite al Administrador Hípico una reconsideración del mismo, y el privilegio de una nueva licencia de jinete. A su vez se modifica la multa impuesta para rebajarla de $5,000.00 a $500.00.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97 DTA 59
1. El artículo 416 de Reglamento Hípico dispone que:

"El jinete que lleve menos del peso señalado en el programa oficial será castigado por el jurado."

2. El Artículo 2310 del Reglamento Hípico, supra, dispone:
"Cualquier persona que incurriere en cualquiera de las prácticas declaradas indeseables, podrá ser *1077 castigada por la Junta, el Administrador o el Jurado con multa que no excederá de $500.00, suspensión o cancelación de su licencia o declarada estorbo hípico, según sea el caso. El jurado podrá decretar la suspensión temporal de licencia en casos apropiados." (Enfasis nuestro.) • •
3. Este artículo dispone que es una práctica indeseable "impedir por medios fraudulentos, ilegales o ilícitos el desarrollo normal de una carrera".
4. El Artículo 1004 del Reglamento Hípico, supra, dispone:

"El Administrador podrá autorizar la- operación de. establos públicos y concederá licencia de Entrenador Público sujeto a las iguientes condiciones:

1.
2.
3.
4.
5..
6..
7. Contratará el personal que necesite para la operación de su establo público disponiéndose que no podrá tener como empleado a ninguna persona que no tenga licencia de la Administración. "
5. De igual forma, conforme a lo solicitado por el recurrente este tribunal tuvo la oportunidad de examinar la silla que alega utilizó el día de la carrera.
6. La aludida doctrina se encuentra regulada por las disposiciones del Art. 1204 del Código Civil, 31 L.P.R.A. 3343.
7. Por mandato expreso del Art. II, Sec. 11, Constitución del Estado Libre Asociado de P.R., en esta jurisdicción "nadie será puesto en riesgo de ser castigado dos veces por el mismo delito ".
8. Véase además: United States v. Halper, 109 S.Ct. 1892 (1989).
9. Generalmente la revisión judicial de decisiones administrativas abarca tres áreas, extendiéndose a (1) la concesión del remedio apropiado, (2) la revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial y (3) a la revisión completa y absoluta de las conclusiones de derecho. D. Fernández Quiñones, supra, a la página 521.
10. Tanto al Sr. Wi'.lie Rohena como al Sr. Rafael Rohena se le presentaron cargos por violaciones al Reglamento Hípico. No obstante, a pesar de que a nuestro juicio debieron haber sido sancionados, éstos fueron exonerados de los cargos por el Administrador Hípico.
11. Estamos conscientes que había un representante de la Administración Hípica presente cuando ocurrieron los hechos que hemos relatados, pero se puede observar que éste estaba mirando hacía otra dirección en ese momento. Por lo que sin duda alguna no pudo percatarse de lo que acontecía en estos instantes.
12. Ley Núm. 83 de 2 de julio de 1987, Art. 6,15 L.P.R.A. 198 e (a).
13. Ley Núm. 112 del 30 de junio de 1957, mejor conocida como "Ley sobre Reglamentos".
*1078 14. La Sec. 7.1 de la L.A.P.A.U., supra, dispone que: "Toda violación a las leyes que administran las agencias o a los reglamentos emitidos al amparo de las mismas podrá ser penalizada con multas administrativas que no excederán de cinco mil dólares ($5,000.00) por cada violación" y más adelante sigue diciendo; "si la ley especial de que se trata dispone una penalidad administrativa mayor a la que se establece en esta sección, la agencia podrá imponer la penalidad mayor". 3 L.P.R.A. 2201.