399 B.R. 549 (2009)
In re Ernest Robert McFARLAND, Jr. and Marlene V. McFarland, Debtors.
Ernest Robert McFarland, Jr. and Marlene V. McFarland, Plaintiffs
v.
United States of America, Defendants.
Bankruptcy No. 9:05-bk-25424-ALP. Adversary No. 9:08-ap-0414-ALP.
United States Bankruptcy Court, M.D. Florida, Fort Myers Division.
January 14, 2009.
*550 Ronald G. Neiwirth, Fowler White Burnett PA, Miami, FL, for Plaintiffs.
Kyle S. Cohen, U.S. Attorney's Office, Fort Myers, FL, for Defendants.

ORDER ON UNITED STATES OF AMERICA'S [RENEWED] MOTION TO DISMISS FIRST AMENDED COMPLAINT (Doc. No. 34)
ALEXANDER L. PASKAY, Bankruptcy Judge.
This is the second attempt by the United States of America (Government) to dismiss the above captioned adversary proceeding commenced by Ernest Robert McFarland, Jr., and Marleen V. McFarland (Debtors). The Debtors in their three-count Complaint seek a determination by this Court that certain claims asserted against them by the Government are not within the exception to discharge under Section 523(a)(7) of the Bankruptcy Code.
This Court held an evidentiary hearing on the first Motion to Dismiss (Doc. No. 7) filed by the Government. At the conclusion, this Court stated that the Motion to Dismiss was denied because the Motion was filed prematurely and the parties should have an opportunity to conduct discovery of facts which are relevant to the resolution of the issue. On December 9, 2008, this Court entered its Order Denying Defendant's Motion to Dismiss (Doc. No. 30).
On December 18, 2008, the Government filed its Motion to Dismiss First Amended Complaint (Doc. No. 34) (Renewed Motion to Dismiss), which is the matter presently before this Court. The facts presented in the Renewed Motion to Dismiss are the same as those which were stated in the first one. Although the Renewed Motion to Dismiss was not technically heard, this Court heard extensive arguments not only on the original Motion to Dismiss but also on the pleading entitled "Cross-Motion for Summary Judgment" (Doc. No. 11) and is satisfied that it is appropriate to rule on the Renewed Motion to Dismiss without the necessity of additional hearing as the arguments on the facts which are part of the record are without dispute and sufficient to form the basis of the ruling. For clarity's sake, this Court is satisfied that it is appropriate to summarize the facts relevant to the resolution of this matter.
The Debtor Ernest Robert McFarland was at the time relevant the President and owner of Pacific General, Inc., (Pacific). In 1999 the Debtor, on behalf of Pacific, signed a contract with General Services Administration to provide construction services in Arizona, California, Hawaii, and Nevada. Under the contract, Pacific became a general contractor for the National Park Service (NPS) and the U.S. Department of Interior (Department of Interior). Under the contract, Pacific was required to obtain a performance and a payment bond for the construction projects it was to perform.
In May 2004 Pacific closed down its operation and went out of business. On October 15, 2005, both Debtors filed their joint Petition for Relief under Chapter 7 of the Bankruptcy Code. Although Mrs. McFarland was not involved with the affairs of Pacific, she signed an indemnity agreement required by the bonding company. The Debtors properly scheduled *551 the Department of Interior in their Schedule of Liabilities and it is without dispute that the Government was aware of the pendency of the Bankruptcy case. They also received the notice sent to creditors of the bar date for filing a Complaint seeking a judgment against the Debtors declaring that the debt owed to the Government was excepted from the general discharge either under Sections 523(a)(2),(4) or (6) of the Bankruptcy Code. The Government failed to file a Complaint pursuant to Section 523(c)(1). In due course, the Debtors obtained their discharge on March 29, 2006.
In the interim, the Government had launched a criminal investigation into Pacific, especially to find out why certain contracts of Pacific with the Department of Interior had not been bonded. The investigation culminated in a twenty-nine (29) Count indictment against Mr. McFarland. The indictment was based on allegations that Mr. McFarland made false representations in connection with certain contracts Pacific had with the Department of Interior. Twenty-three (23) of the Counts asserted that he deliberately misrepresented that performance bonds covered certain contracts when they were not covered. Notwithstanding this fact, Pacific had been charging the Government for premiums for the non-existing bonds when it submitted its request for payment. The other six (6) Counts involved certain certifications made by Pacific on request for payment which falsely stated that all subcontractors had been paid in full on the contract when, in fact, they were not paid.
Mr. McFarland disputed the bond Counts and claimed that the billing for the premiums were simply erroneous and offered to repay the Government $29,000.00, representing the amount of premiums charged. The Government refused to accept the offer. Ultimately, McFarland plead guilty to six (6) Counts for falsely claiming that the subcontractors had been paid. As part of the plea bargain, the Government dismissed the twenty-three Counts which dealt with the bond premiums.
Mr. McFarland agreed to restitution in the total amount of the pecuniary loss of the Government which included both the cost of finishing the unbonded jobs and the improperly collected reimbursement for bond premiums. As stated at the sentencing hearing by the Assistant U.S. Attorney, the total amount of restitution was $435,297.24. Also as part of the plea agreement, Mr. McFarland was assessed a $5,000.00 fine. Mr. McFarland agreed that these sums were nondischargeable. McFarland was sentenced on the remaining six (6) Counts of the indictment. In addition to a non-custodial penalty and probation, he was also ordered to pay the restitution of $435,297.24, the exact number that the other Assistant U.S. Attorney agreed to be the Government's actual damages.
Very shortly after the sentencing of the Debtor on August 8, 2008, Assistant U.S. Attorney Robert K. Lu with the Civil Division of the Department of Justice wrote a letter to Martin Raskin, who represented McFarland in the criminal case, stating that McFarland is still liable for sixty-three (63) false claims submitted under the contract. These claims were false because the subcontractors on those jobs were never paid, or because the work was never bonded. On those sixty-three (63) claims the Government paid out a total of $7,284,497.62. If this amount is trebled, the total would be approximately $22,500,000.00. While this amount could be trebled under the Statute, the Government offered to settle the matter for $2,346,500.00. Mr. Lu stated that while the Government was willing and ready to dissolve the dispute amicably, he was prepared *552 to file a lawsuit against Mr. McFarland and his wife, Marlene, should they fail to reach an acceptable resolution of these claims. The Debtors refused the offer to settle and insisted that while the obligation represented by the judgment of restitution is nondischargeable, the Government is not entitled to any additional amounts asserted against them.
These are the facts relevant to the issues raised by the Debtors in their Complaint in which they seek a declaration by this Court that, with the rare exception of the criminal restitution fine and costs, all other claims by the Government now asserted for treble or exemplary damages are dischargeable in their Bankruptcy case. The Government now asserts that the total liability of the Debtors is in the sum of $22,500,000.00 and the amount is within the exceptions to discharge of Section 523(a)(7) of the Bankruptcy Code.
As an alternative grounds for relief, the Debtors now contend that even if the Government's claim against them is within the exception of Section 523(a)(7), imposition of the claim would be a violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution.
It is evident from the foregoing, that a resolution of the claim asserted by the Debtors, i.e., the dischargeability of a claim asserted against them for treble damages by the Government would require a construction by this Court of Section 523(a)(7) and 31 U.S.C. §§ 3729-3731 (1982 Edition. Supp. II)
Section 523(a)(7) provides:
(a) A discharge under section 727, 1141, 1228(a) 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt
. . .
(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty  . . .
Section 523(c)(1) provides:
(c)(1) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (1) of this section.
F.R.B.P. 4007(c) provides:
(c) TIME FOR FILING COMPLAINT UNDER § 523(c) IN A CHAPTER 7 LIQUIDATION, CHAPTER 11 REORGANIZATION, OR CHAPTER 12 FAMILY FARMER'S DEBT ADJUSTMENT CASE; NOTICE OF TIME FIXED. A complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.
In attempting to construe Section of 523(a)(7), the Debtors rely on the language used by Congress in using the term the amount of "damages" which the Government sustained because of the act of the person. According to the Debtor, that terminology indicates an intention by Congress that the exception should not cover *553 compensation for damages, but is limited to fine, penalty or forfeiture payable to the Government.
The primary case relied on by the Debtor involves factually the same scenario which is involved presently before this Court in the case of Winters v. United States of America (In re Winters), 2006 WL 3833921, 2006 Bankr.Lexis 3678 (Bankr.W.D.Tenn, Dec. 27, 2006); vacated due to death of debtor, 2007 WL 1149952, 2007 Bankr.Lexis 1382 (Bankr.W.D.Tenn., Feb. 16, 2007)
The Court in Winters considered the sections involved and concluded that the civil penalty of $10,000.00 imposed upon the debtor represented a pecuniary loss to the Government for the damages it suffered. Therefore, the obligation was not excepted by Section 523(a)(7) and because the Government failed to file a complaint seeking to except the obligation pursuant to Section 523(a)(2)(A), Section 523(c), F.R.B.P. 4007(c), and the award was discharged.
The difficulty with the position urged by the Debtor and the viability of the decision in Winters is weakened because after the decision was granted, and although it was a final decision, the debtor died and, therefore, the Government filed a motion to alter or amend an order granting summary judgment in favor of the debtor because the debtor died. The Court considered the motion and granted the same and dismissed the Adversary Proceeding.
In opposition, the Government cites the case of United States v. Cassidy (In re Cassidy), 213 B.R. 673 (Bankr.W.D.Ky. 1997). Thomas M. Cassidy was a medical doctor who was sued by the Government on the False Claims Act, 31 U.S.C. §§ 3729-3733. In addition to the civil suit, the Debtor was indicted. The Debtor entered a guilty plea in that action to one Count of submitting false claims to CHAMPUS, one Count of Medicare Fraud and one Count of Medicaid fraud. Less than one month thereafter, the defendant filed his bankruptcy and sought relief under Chapter 7 of the Code. On July 2, 1996, the District Court entered a judgment against the defendant based on a plea agreement and sentenced the defendant to 12 months of imprisonment and ordered him to pay $80,645.68 in restitution. Of the $80,645.68 restitution amount, $33,463.00 was to be paid to CHAMPUS under Count I of the criminal complaint; $10,213.80 to Medicare under Count II; and $36,968.00 to Medicaid under Count III.
The Court held that the treble damages imposed by the False Claims Act were penal in nature as opposed to compensatory, thus making the award nondischargeable under Section 523(a)(7). The government also relies on the cases of United States v. Custodio, 1995 WL 670137 (D.Colo.1995); In re Tapper, 123 B.R. 594 (Bankr.N.D.Ill.1991); In re Renfrow, 112 B.R. 22 (Bankr.W.D.Ky.1989) (civil penalties for violation of Kentucky coal mining was held to be nondischargeable, pursuant to Section 523(a)(7)).
Having considered the authorities cited by the Government, one would be constrained to conclude that the treble damage claim in the matter before this Court is within the exception to discharge pursuant to Section 523(a)(7).
Although the application of the Double Jeopardy Clause was not asserted in the pleadings, counsel for McFarland argued it as a defense under the teaching of the Supreme Court Case of United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989)
Mr. Halper was convicted for submitting sixty-five (65) false claims for reimbursement by the Government under the Federal *554 Criminal False Claim Statute, 18 USC § 287. He was sentence to imprisonment for two years and fined $5000.00. After the conclusion of the criminal case the Government sued Mr. Halper in the U.S. District Court under the Civil False Claims Act 31 USC §§ 3729-3731. The Court considered the remedy under Section 3729 which provides that a person in violation is "liable to the United States Government for a civil penalty of $2000, an amount equal to two (2) times the amount of damages the Government sustains because of the act of the person, and costs of the civil action." Having violated the Act sixty-five (65) separate times, Mr. Halper thus appeared to be subject to a statutory penalty of more than $130,000.00.
The Supreme Court in Halper considered whether the civil penalty imposed bore any "rational relation" to the amount of the Government's actual loss in investigating and prosecuting a false claim. The Court, having concluded that it did not, held that the imposition of the full amount of the statutory claim would violate the Double Jeopardy Clause of the Fifth Amendment.
Eight years later the Supreme Court had the opportunity to consider again the applicability of the Double Jeopardy Clause involving a similar factual scenario as in Halper. In the case of John Hudson, et al. v. United States, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450, Mr. Hudson and other bank officers were subjected to a debarment and monetary penalties by the Office of the Comptroller of Currency (OCC) for misapplication of bank funds. Thereafter, Mr. Hudson and the others were indicted for the same violation. The District Court dismissed the indictment, finding that the indictment violated the Double Jeopardy Clause. On appeal, the Court of Appeals reversed and remanded. Certiorari was granted.
The Supreme Court, having considered the historical treatment of the application of the Doctrine of Double Jeopardy and the appropriate standard of statutory construction, concluded that Halper deviated from long-standing Double Jeopardy principles and was ill considered. The Halper test for determining whether a particular sanction is "punitive," thus subject to the strictures of the Double Jeopardy Clause, proved unworkable. The Court pointed out that all civil penalties have some deterrent effect, and the fact that the sanctions imposed may also be criminal is insufficient to render money penalties and debarment sanctions criminally punitive, particularly in the Double Jeopardy context. Hudson, supra.
As stated by Justice Scalia in his concurring opinion that it has been settled since the decision in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) that the Double Jeopardy Clause is not implicated simply because the criminal charge involves "essentially the same conduct" for which the defendant has previously been punished. Hudson, supra.
This Court is not unmindful that the factual scenario in Hudson is unlike the scenario involved in the matter under consideration. However, the relevancy of Hudson still cannot be disregarded because of its teaching, which was to expressly reject the approach and the holding of Halper.
In the instant case, the criminal case was concluded against the Debtor after the Government asserted, for the first time, a civil claim for treble damages contending that it was within the exception to discharge pursuant to Section 523(a)(7). The assertion of this claim is not made to pursue a criminal case against McFarland, since that was already concluded. It is *555 merely to challenge the nondischargeability of the claim by the Debtor.
Considering the totality of the issues as outlined above, this Court is satisfied that the Debtor's claim that the Government's treble damage claim asserted against them is not within the Section 523(a)(7) exception is rejected and, therefore, the claim as pled in Count I of the Complaint is without merit and shall be dismissed as to Mr. McFarland.
This leaves for consideration the claim asserted against Mrs. McFarland who was not charged criminally. This record is devoid of any evidence which would even intimate that she did knowingly present or caused to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval, thus subjecting her to the civil penalty under 31 U.S.C. § 3729(a)(1). For this reason, any claim against Mrs. McFarland has been discharged in Bankruptcy and, therefore, the Government is prohibited to proceed to attempt to enforce the penalties against her based on 31 U.S.C. § 3729(a).
Accordingly, it is
ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss filed by the United States of America (Doc. No. 34) be, and the same is hereby, denied in part and granted in part. It is further
ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss filed by the United States of America as to the claim asserted in Count I of the Complaint by Mr. McFarland be, and the same is hereby, granted and his claim is declared to be within the exception of Section 523(a)(7), thus nondischargeable. It is further
ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss filed by the United States of America as to the claim asserted in Count I of the Complaint by Mrs. McFarland be, and the same is hereby, denied and the claim asserted against her is declared to have been discharged. It is further
ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss filed by the United States of America as to the claim asserted in Count II of the Complaint by Mrs. McFarland be, and the same is hereby, denied. The Government shall have 30 days from the date of this Order to file an Answer to the claim asserted for contempt in Count II. It is further
ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss filed by the United States of America as to the claim asserted in Count III of the Complaint by Mr. McFarland be, and the same is hereby, granted and the claim is hereby dismissed with prejudice.